# CHARLESTON

HARBERT v. HOPE NATURAL GAS CO.

Submitted January 19, 1915.  Decided April 20, 1915.

1. COVENANTS—*Oil and Gas Lease—Construction—Covenant Running With the Land.*

   A stipulation, in an oil and gas lease, that, if gas is found in paying quantities, the lessor shall have free gas for domestic purposes, by making his own connection, is a covenant running with the land, but is not, necessarily, to be performed on the land.  (p. 211).

2. MINES AND MINERALS—*Oil and Gas Lease—Construction—Determination of Intention.*

   Consumption of the gas not being confined to a dwelling house on the leased premises, by the terms of the lease, the place of consumption is one of intention, to be determined by the facts and circumstances relating to the subject matter of contract, known to the parties at the time, and by their subsequent conduct in the execution thereof, indicating such intention.  (p. 211).

3. SAME—*Oil and Gas Lease—Construction by Contract.*

   If, after a producing gas well is drilled on the lease, the lessor's grantee and assignee of the free gas right applies to the lessee's assignee of the lease for free gas for use in his dwelling house, not situate on the lease, and such assignee, through its agents, having knowledge of the facts, permits him to tap one of its gas lines in the vicinity of such well, but not connected with it, and to use gas therefrom for a long period of time, such conduct evidences a practical construction of the covenant, and is an implied admission of the covenantee's right to consume the gas elsewhere than on the

lease, but not of his right to free gas from wells other than those on the leased premises. (p. 211).

4. TRIAL—*Instruction—Request—Breach of Covenant.*
    In such case, the assignee of the covenantor may be enjoined from interfering with the rights of the lessor's grantee to make connection with, and obtain gas from a well on the leased premises. (p. 211).

(ROBINSON, PRESIDENT, dissenting.)

(LYNCH, JUDGE, absent.)

Appeal from Circuit Court, Doddridge County.

Suit by Elmus E. Harbert against the Hope Natural Gas Company. From a decree for defendant, plaintiff appeals.

*Reversed and rendered.*

*Homer Strosnider,* for appellant.

*A. B. Fleming, Chas. Powell,* and *Kemble White,* for appellee.

WILLIAMS, JUDGE:

Plaintiff brought this suit against the Hope Natural Gas Company, praying that it be enjoined from interfering with his right to take and use, for domestic purposes, free of charge, the gas from defendant's gas well situate on his land. A temporary injunction was awarded; and defendant gave notice that it would move for its dissolution. Plaintiff appeared and resisted the motion, which was heard by the judge in vacation, upon the bill, answer and affidavits taken, pro and con; and the judge took time to consider thereof. On the 25th of February, 1911, at a special term of court, he overruled the motion, and continued the injunction in force, until further order of the court. The cause was thereafter fully matured, and heard upon the pleadings and numerous depositions taken by the respective parties, and a final decree entered on the 15th of September, 1913, holding that plaintiff was entitled to gas from defendant's well for domestic purposes, free of charge, to be consumed on the land on which the well was situate, and not elsewhere, and dissolving the injunction and dismissing plaintiff's bill; and he has appealed.

The land, described as containing 221.47 acres and situate

in Doddridge county, was conveyed to plaintiff by W. H. H. Lyon and wife on the 9th of February, 1906. It was subject to an oil and gas lease made by the grantors to the South Penn Oil Company, in 1902. In addition to the usual oil and gas rentals, which, for each gas well, was $400 a year, the lease contained this clause: "If gas is found on this farm in paying quantities the first party shall have gas free of charge for domestic purposes by making their own connections at their own risk." In the conveyance to plaintiff, Lyon excepted and reserved the Pittsburg stratum of coal, and all the oil and gas in and under the land, together with mining rights, for exploring for, and removing said minerals, but the right to free gas for domestic purposes was expressly conveyed; and the deed further provided that, if Lyon should make any other or further oil and gas lease, he was to make a similar reservation of free gas for plaintiff's benefit. When Lyon leased to the South Penn Oil Company he was living on another tract of land situate about two miles from the one leased; and the only building on the leased tract was a two-room, log cabin, a story and a half high. As to whether it was occupied by anyone at that time, the evidence is conflicting. Mr. Lyon says he thinks his son was then living in it, but he is not certain. At the time of the conveyance to plaintiff, he also was living on another tract of land, separate from that on which Lyon lived, situate about a mile from the leased land, and continued to reside thereon.

In the year 1904, the South Penn Oil Company assigned to the Hope Natural Gas Company the gas and mining rights in connection therewith, on the Lyon land; and, in 1905, it drilled a producing gas well thereon. In the latter part of 1906, plaintiff applied to it, through its agents in the field, for gas from the well for domestic purposes; and, in January or February, 1907, his line was connected with one of defendant's pipe lines which connected with other wells than the well on the Lyon tract. He continued to use the gas thus supplied until he was disconnected by defendant on June 13, 1910. He thereupon moved his line, and connected it up with the J. O. Ice line which was fed by the gas well on the Lyon tract; and he was again cut loose. He then brought this suit to enjoin defendant from interfering with his right to connect

his pipe line with the well on the Lyon's farm, and for general relief. The bill avers that, at the date of the lease to the South Penn Oil Company, Lyon was not living on the leased land; that in November, 1906, plaintiff applied to defendant for free gas, for domestic purposes, to be used in the dwelling house in which he now lives; that defendant permitted him to take and use it from one of its lines, not connected with the Lyon well, until sometime in June, 1910, when his line was disconnected; and that he thereafter connected with the well on the Lyon farm, and was again disconnected. None of these allegations are denied, and most of them are expressly admitted in defendant's answer. The bill also avers that plaintiff has not consumed any more gas in his dwelling house, where he now lives, than he would have consumed, if he had lived on the leased premises. This averment is not denied, but is alleged to be immaterial.

Defendant has taken much evidence to prove that the connection with its line was made without authority; and there is some conflict in the testimony, as to which one of defendant's agents did make the connection. But, in view of defendant's admission, it is unnecessary to consider this conflicting testimony. That defendant knew plaintiff was connected with its line, and was using gas, free of charge, in his dwelling house, not on the leased premises, is, we think, abundantly shown. All of its field agents, who had charge of its lines in that vicinity during the time plaintiff was using gas, must have known that he was consuming it off the leased land. A letter to plaintiff from defendant's home office in Pittsburg, written by John G. Pew, its vice-president, on December 30, 1908, exhibited with plaintiff's deposition, proves that it knew he was using gas, free of charge, from its line. In this letter Mr. Pew complains of leakage in plaintiff's pipe line and of using an open outside light; and he closes by saying: "We do not object to your using an outside enclosed light of a Welsbach or similar pattern but all others must be disconnected." This letter was accompanied by a circular one, intended for consumers of gas generally, in defendant's territory, and it calls attention to the great waste of gas in the field, on account of leakages in private lines, and to past efforts by the legislature and public

spirited men generally, to prevent such useless waste, and requests the users of gas to put their pipe lines and appliances in good repair by the 20th of January, 1909. This letter was addressed to all consumers of gas from defendant's wells or lines, and a copy of it, together with the private letter, was delivered to plaintiff by one of defendant's agents. It concludes with the following clause: "In order to secure prompt co-operation in this movement, the Hope Natural Gas Company offers the labor of its own employees free of charge to you, to complete the first repairs to your lines, regulators and appliances, after which you will be expected to maintain your pipes, etc., in proper condition with reasonable care. The Company also offers to furnish a new regulator at cost." Even if defendant did not expressly authorize the connection to be made with its line, these letters, admitted by Mr. Pew to have been written by him, prove a ratification of its agent's act. It is, therefore, not material to inquire which one of defendant's numerous field agents made the connection; that it was done by some one of them is made sufficiently certain by the evidence.

Plaintiff, of course, had not the right to demand free gas from any of defendant's wells, except the one on the Lyon tract; still, as long as defendant supplied him with free gas, it was immaterial to him where it came from, provided it cost him no more to make his connection with the line or well. But his right was limited to the wells on the Lyon land; and he could demand that he be supplied with gas therefrom, on making his own connection, so long as he owned the surface of the Lyon tract, and the wells thereon produced gas. That the Lyon well was producing, at the time this suit was brought, is proven by Mr. Lyon who testified that he was still receiving, from defendant, his gas well rental of $400 per year. If the well were not flowing it would not be paying.

Defendant seeks to excuse itself for denying free gas to plaintiff, on the alleged ground that it is not bound by law, or by the terms of its covenant, to furnish free gas for domestic purposes to plaintiff's dwelling house situate off the Lyon land. The lease is silent as to where the free gas is to be consumed, and defendant insists that the law confines its use

on the particular tract of land. It urges, furthermore, that
the covenant for free gas was personal to the covenantee and
unassignable. The latter claim, we think, is wholly unten-
able. But passing it for the present, we ask, what possible
pecuniary interest can defendant have in the question where
the gas shall be consumed, so long as it is at no expense in
delivering it, and no more is consumed at one place than would
be consumed at another? The question answers itself. De-
fendant knew, by its agents, that plaintiff lived off the land
when he made application for free gas; and it also knew,
from the same source, that he lived on a different tract of
land from that on which Lyon lived at the time the South
Penn Oil Company covenanted with him for free gas for
domestic purposes. Yet, notwithstanding, it permitted plain-
tiff to lay a private line, more than a mile in length, at
considerable cost and allowed him to connect with one of
its pipe lines, and continue to use the gas therefrom for a
period of three and a half years. Presumably, it did so as
a compliance with its obligation to perform what it under-
stood to be the covenant of its assignor, the South Penn Oil
Company, with Lyon, without raising the slightest objection
thereto, so far as appears from the record. If defendant
objected to the consumption of the gas elsewhere than on
the Lyon land, why did it not advise plaintiff before he
incurred the expense of laying his line? These facts and
circumstances clearly indicate that the objection now made,
is an afterthought with defendant, and tend to prove the
interpretation the parties placed upon the covenant; they
are evidence of a practical construction of it. The lease
itself is silent as to where the free gas is to be consumed.
It is clear, however, that the covenant is not a mere personal
one, but a covenant running with the land; as much so as
the covenant to pay the money rental on gas wells. It was a
benefit to the land and would have passed with a grant of
the land. 2 Min. Inst., (2nd ed.), pages 167 and 698; *Akin
v. Oil Co.,* 41 Atl. 748. But, to avoid any question on this
point, Lyon expressly assigned the covenant to plaintiff, in
terms. He saw fit, however, to reserve to himself the money
rental for the gas wells. Had he not done so, it, too, would
have passed to plaintiff by the grant of the land. A covenant

to pay rent is one running with the land; but, that it is such, does not prevent the owner from passing title to it, and reserving the land; or, vice versa. Whether Lyon could have separated the free gas covenant from the land, by a reservation of it, or by assigning it to a stranger to the title, is a question we are not required to decide. But granting that he could have done so, it still would not indicate that the covenant was not a real covenant, running with the land. He did not do so, but passed both the land and the covenant to plaintiff.

The legal question presented for decision is this: Has plaintiff, owning both the land and the covenant for free gas from the wells thereon, for domestic purposes, the right to carry the gas off the land for his consumption? The covenant for free gas, although running with the land, is, nevertheless, a part of the consideration of the lease. Thornton on Oil and Gas, Sec. 226. What right has the lessee to say how the lessor shall use the consideration, so long as his burden is not increased? A covenant running with the land need not, necessarily, be performed on the land itself. 11 Cyc. 1080. "A covenant is capable of running with the land, although not directly to be performed on it." *Van Rensselaer* v. *Smith,* 27 Barb. (N. Y.) 104. See also, *Norman* v. *Wells,* 17 Wend. 136. There is certainly nothing in the public policy, which would prohibit the owner of the land and covenantee for free gas, from consuming it off the premises; and we find no reason for so interpreting the lease. If the purpose was to confine the use of gas to a dwelling house on the leased premises, why did not the covenantor so stipulate? The subsequent conduct of the parties, given practical construction to the covenant, indicates that they did not so intend. Consumption of the gas, elsewhere than on the land, does not destroy the real character of the covenant. The covenant runs with the land regardless of where the gas is consumed, because it issues out of the land and is a benefit to it. As before stated, defendant is interested only in the quantity consumed. It is bound, however, to furnish gas for one dwelling house only; and has a right to demand that plaintiff keep his pipe lines and appliances in good repair, and use a closed light on the outside, with a Welsbach, or some

other approved burner, in order to prevent needless waste. *Hall* v. *The Philadelphia Co.*, 72 W. Va. 573.

Defendant's counsel have assigned cross-error. One is that defendant was improperly refused permission to file an amended answer. This was not error. The amended answer was tendered after the issues had been made and numerous depositions taken, and after the cause was ready for final submission. Defendant does not show sufficient reason why he should have been allowed to amend. The rule is much stricter in regard to amending answers than bills. *Ratliff* v. *Sommers*, 55 W. Va. 30. It is largely within the discretion of the chancellor, and we do not see that he has abused his discretion in this instance. *Liggon* v. *Smith*, 4 H. & M. 407. The statute permitting a defendant to file his answer any time before a final decree, has no relation to amendments. Plaintiff's case is disclosed by his bill, and defendant is supposed to be fully advised of his defense before answering. Moreover, both the bill and answer were sworn to in this case, an additional reason for refusing amendment. The other cross-assignments are sufficiently answered in the discussion of the principal question concerning the nature of the free gas clause in the lease.

The decree will be reversed and a decree entered here reinstating the injunction and requiring defendant to permit plaintiff to connect his private pipe line with the well on the Lyon tract of land, or with its pipe line running thereto, as it may elect.

*Reversed, decree entered here.*