# CHARLESTON.

ALVIN D. BASSELL *v.* WEST VIRGINIA CENTRAL GAS CO.

Submitted April 6, 1920.   Decided April 13, 1920.

1.  SPECIFIC PERFORMANCE—*Lessee's Covenant to Furnish Lessor Free Gas for Domestic Use Enforcible.*

     There is jurisdiction in equity, to compel specific performance of covenants in leases, violations of which are not adequately remediable by actions at law, and also to enforce specific performance of a covenant in a lease of land for gas production, to furnish the lessor free gas for domestic purposes from wells on the leased land.   (p. 200).

2.  MINES AND MINERALS—*No Implied Covenant That Rent-Yielding Periods or Number of Gas Wells Shall be Limited.*

     There is no implied covenant or condition in a lease of land for gas production, reserving a fixed, annual, money rental for each productive gas well to be drilled on the leased land and securing to the lessor therein, by a stipulation, right to free gas for domestic purposes on the land, that the rent-yielding periods or lives of the wells shall not be reduced or limited, nor the number of rent-yielding wells necessary to full development of the demised land, limited or restricted, by stimulation or acceleration of the flow of the gas from the wells and through the pipe-lines, by artificial means or methods, such as operation of compressors and gas pumps.   (p. 200).

3.  SAME—*Lessee Reducing Pressure so as to Destroy Lessor's Right to Free Gas Must Restore Supply.*

     The unrestricted right of the lessee in a lease of land for gas production, to operate its lines and wells by means of com-

pressors and pumps and thus reduce the gas pressure in the portions of lines lying between the wells and such compressors and pumps, by suction, to such an extent as to interrupt and destroy the lessor's supply of free gas for domestic purposes from the wells, under a stipulation guaranteeing right thereto, does not absolve the former from obligation and duty to continue or restore such supply, even though it may be expensive and inconvenient to do so.   (p. 200).

4.   SAME—*Lessee May Furnish Lessor's Stipulated Free Gas From Sources Other Than Wells Drilled on Leased Land.*

The provision in the stipulation for such free gas, that it shall be taken from the wells drilled on the demised land, is not of the essence thereof, wherefore the lessee may comply with the obligation thereof by furnishing the gas contemplated by it, in adequate quantities and for the required period of time from any other source.   (p. 203).

Appeal from Circuit Court, Harrison County.

Bill by Alvin D. Bassell against the West Virginia Gas Company.   From the decree, defendant appeals and plaintiff cross-assigns error.

*Reversed and remanded.*

*Brannon, Stathers & Stathers,* for appellant.
*E. D. Lewis,* for appellee.

POFFENBARGER, JUDGE:

The cause in which this appeal was taken involves novel questions.   One purpose of the bill filed by the lessor in an oil and gas lease is prevention of the use by the lessee, of compressors and pumps, in the operation of gas wells, in such manner as to increase the gas production of the wells now operated on the premises and thus curtail their lives or productive periods and limit the number of wells necessary to full development of the property, to the detriment of the lessor in two ways, reduction · of the period of annual rental for each well and limitation of the number of wells drilled and to be drilled, yielding such rentals.   The other is restoration to the lessor, of a supply for free gas for domestic use in certain houses on the land, from the wells, reserved and stipulated for in the lease and furnished for some time, but incidentally interrupted and discontinued by the use of the compressors and pumps.   Both purposes would be

accomplished, according to the claims and contentions of the plaintiff, by suppression of the use of the compressors and pumps.

The decree entered in the cause is unsatisfactory to both parties. It enjoins and restrains the defendant "from so using and operating its compressor, or pump station or stations, as to relieve or reduce atmospheric pressure at the mouths of the gas wells situate on the plaintiff's land thereby creating suction increasing the natural flow of gas from said wells:" but permits it to use its compressors and pumps, subject to the limitation so prescribed. Complaining of the restraint put upon it in the use of the wells, the defendant has appealed, and the plaintiff, deeming the relief granted to be practically worthless to him, since it permits reduction of the gas pressure of the wells, has cross-assigned error. Recognizing the fairness and justice of the plaintiff's demand for restoration of gas to his dwelling houses, if not his right to it, the defendant offered, in the course of the proceedings, to furnish it from wells or sources other than the wells on the lease, and renewed the offer before submission, and filed its written offer to do so, in the cause.

If there is any merit in the plaintiff's bill, the demurrer to it was properly overruled, for there is jurisdiction in equity to enforce specific performance of covenants of a lease, violations of which are not adequately remediable by an action at law. *Carnegie Natural Gas Co.* v. *South Penn Oil Co.,* 56 W. Va., 402, 415. There is such jurisdiction also to enforce a covenant in an oil and gas lease, to furnish the lessor free gas for domestic purposes, from the wells on the lease. *Hall* v. *Philadelphia Co.,* 72 W. Va. 573; *Harbert* v. *Hope Natural Gas Co.,* 76 W. Va. 207.

Plaintiff's claims of right to preservation of the productive and rental-yielding periods or lives of the wells on his lands and the number of wells necessary to full development of the lease, as determined by the natural flow of gas from the wells and through the pipe lines, to the end that each well may yield its rent for a longer period of time than is possible when artificial means are used to stimulate or accelerate the flow of gas, and that more rent-yielding wells may be necessary than are requisite when such artificial means are adopted, stands upon no ex-

press covenant or condition in the lease. He insists, however, that limitations upon his right to rents, by adoption of such means or methods of operation, are forbidden by an implied covenant or condition; and, to sustain this position, he invokes the rule that the intention of the parties to a contract is to be ascertained by consideration of its terms and provisions, in the light of the nature of the subject matter, the situation and purposes of the parties and the conditions and circumstances prevailing at the time of the execution thereof. At the date of the lease, gas compressors were not used in the neighborhood of his wells, for acceleration of the flow of gas, nor to facilitate transportation thereof through the pipe-lines; but they were in use in some other sections of the country. There is no proof, however, that he had any knowledge of the fact, nor that he contemplated the use thereof in connection with any wells that might be drilled on the leased land. Nevertheless, both parties must be deemed to have known the gas in the land, if any, was to be taken out and used as a commodity. It was to be transported from the premises to points at which it could be sold and devoted to various uses and purposes. The lessor must be deemed to have known also, that the commercial disposition of the large quantities of gas that might be found in his and other lands in that section of the state would involve the outlay of vast amounts of money, in the drilling, equipment and operation of wells and construction and operation of pipe-lines and other facilities. It cannot be doubted that he knew the wells on his premises were to be or might be connected up with a huge system of transportation and delivery, reaching distant places and supplying large populations with gas for municipal, industrial and domestic purposes; nor that he had reason to believe the demands of the capital invested and the industries and populations to be supplied might require the adoption of such means and methods of operation as would make the wells yield their gas as rapidly and voluminously as possible. Having thus made a contract by which the gas in his land might be connected up with, and made a factor in, the industry, commerce and domestic life of the country, he may well be deemed to have intended it to be taken out and marketed in conformity with the requirements of industrial, commercial and domestic life, as other commodities are,

except in so far as he may have placed restrictions upon production and delivery for such purposes, by express stipulation. He executed the lease and conferred this right in an age of rapid and startling invention which wrought its wonders and transformations in no department of human activity more suddenly, progressively and radically than in mining, transportation and enlargement of enterprises and undertakings. Parties to contracts are held, in the absence of agreements to the contrary, to have contemplated modifications of their relations under their contracts, by the development of improvements and new methods in the progress of science and invention. "The common law is the living science of justice, and adopts the application of fixed principles to changes in the affairs of men." Mr. Justice Mitchell, in *Saltsburg Gas Co.* v. *Borough of Saltsburg,* 138 Pa. 250, 259. This principle was applied in *Hall* v. *Philadelphia Co.,* 72 W. Va. 573 and *Pittsburgh etc. Gas. Co.* v. *Richardson,* 84 W. Va. 412, 100 S. E. 220. It was recognized also in *Belcher* v. *Big Four C. & C. Co.,* 68 W. Va. 716.

It cannot be assumed nor entertained as sound argument, that the reservation of an annual rental per well, instead of a meter rate, as compensation for the gas or the right to take it out, was based upon the idea of undisturbed natural flow. The rental bears no relation to the quantity of gas contemplated or actually produced. It was compensation fixed in advance of production and without any definite knowledge as to what the production would be. Hence, the rental reserved was the same for wells of light production and wells of heavy production. In respect of the adequacy of the compensation and the duration of the annual rentals, the contract was manifestly one of hazard. Being such, it argues nothing in support of the construction contended for.

Nor can the stipulation for free gas for domestic purposes be regarded as one having prolongation of the lives of the wells for one of its purposes. While free gas was part of the consideration for the estate or right granted by the lease, the stipulation, securing it is silent as to the duration of the right. It is clearly collateral and subordinate in character. Under the free gas stipulation, the right was not to accrue, except in the event of production. When it accrued, it came from the production and was merely incidental thereto. Besides, it was a provision cus-

tomarily inserted in all gas leases, not to control production or operation of the wells in any sense, but to secure free gas for domestic purposes. If the lease had reserved compensation by meter rate, it would have contained the same free gas clause. Such being its obvious character and purpose, it cannot be permitted to work a limitation upon the lessee's methods of operation.

But in no event nor under any circumstances, can the lessee escape the obligation of its contract, to furnish free gas for domestic use in the four dwelling houses upon the land, if required, while it operates any well under the lease. The lessor's right to such gas, although collateral, subordinate and incidental in character, is as clearly conferred as that of the lessee, to produce the gas from the land. While the lease says he shall have such supply from any well drilled on the premises, this part of the provision is not of the essence of the stipulation. Gas from any other wells or from any of the lessee's gas lines in the neighborhood will answer his purposes just as well as the gas from the wells on his land, provided he obtains it in sufficient quantity and for the same period of time that such wells would furnish it. This conclusion harmonizes with a principle applied in *Harbert* v. *Hope Natural Gas Co.,* 76 W. Va., 207. Right in the lessee to operate the wells so as to reduce the gas pressure in the lines below the point at which they will furnish free gas, under the stipulation, is not inconsistent with duty on its part to perform its implied covenant to furnish the lessor free gas. Both are manifestly practicable, and the latter should be performed, even though performance thereof should involve expense. A line can be attached to the discharging section of the main in which the pump works and led back into the region of the wells, if necessary. No doubt the lessee derives large profit from the use of its compressors or pumps. In doing so, it incidentally destroys the lessor's supply of gas. It is, therefore, neither unreasonable nor inequitable, to require it to restore that supply in some way, even though the restoration should entail considerable expense.

The lessor has proceeded upon the theory of his absolute right practically to prevent the use of the plaintiff's compressors, in so far as it affects his wells, and thus prolong their lives, induce

the drilling of more of them and secure restoration of his supply of gas. Accordingly, he rejected the offer of the lessee to furnish free gas from a source other than the wells on his land. Now that he is unable to accomplish all of his purposes, or any of them by the method he has adopted, he may desire to avail himself of the right to have his supply of gas for domestic purposes restored. If he does, no reason why he may not do so by proper procedure in this cause, is perceived.

Agreeably to the principles and conclusions herein stated, the decree complained of will be reversed and the cause remanded.

*Reversed and remanded.*