Myrtle Ketchum *v.* Chartiers Oil Company

(No. 8916)

Submitted September 26, 1939. Decided October 24, 1939.

504

*F. F. Scaggs,* for appellant.
*Chad W. Ketchum* and *Jess Hammock,* for appellee.

RILEY, JUDGE:

Defendant, The Chartiers Oil Company, appeals from a decree of the Circuit Court of Wayne County, awarding plaintiff, Myrtle Ketchum, a permanent injunction inhibiting the defendant from cutting off the flow of gas from its "main line" gas line to plaintiff's dwelling, and refusing the dissolution of a temporary mandatory injunction requiring defendant to restore the flow of gas to such dwelling.

Plaintiff owns in fee a tract of land, situate in Wayne County, of approximately 65 acres, being part of a tract of 175 acres, more or less, which was leased for oil and gas purposes to defendant by her predecessors in title by lease dated February 28, 1924. This lease contains a provision

that it shall remain in force for the term of five years from date, "and as long thereafter as oil or gas, or either of them, is produced from said land by the said party of the second part, its successors and assigns." It further provides for the payment by lessee of $75.00 each three months in advance for gas produced from each well drilled on the premises, the product of which is marketed and sold, said payments to continue during the time that gas from said well is marketed and used or while the well is shut in as a gas well. There is a further provision to the effect that lessor may lay a line to any gas well drilled on the leased premises and take therefrom free gas for use in the two dwelling houses thereon. A further provision of the lease requires the lessee to complete a well within one month from date of lease or pay a delay rental at the rate of $43.75 quarterly in advance for each three months in the completion of said well until a producing well is drilled or the lease surrendered. And finally, the lease provides that lessees shall have the right to surrender and cancel this lease at any time upon the payment of one dollar.

During 1924, defendant drilled a well upon the premises, from which plaintiff used gas for the purpose of lighting and heating her dwelling house, which dwelling house was on the 65-acre tract at the time the lease was made. This well was drilled to a greater depth for the purpose of exploring for more gas. Prior to the commencement of this additional drilling, plaintiff was permitted to use gas from one of defendant's lines known and designated as the "main line", and on February 22, 1939, defendant cut off this supply of gas. About the same time, it plugged the well and refused to furnish plaintiff gas from any source and mailed to her its check in the amount of $75.00 for quarterly royalty from March 4, 1939, to June 4, 1939, which check plaintiff accepted.

From the answer, it appears that the gas from this well was not marketed until November, 1937, at which time defendant ascertained definitely that the well was not producing gas in paying quantities. In fact, the answer

discloses that in the Carboniferous sand the daily flow, in the absence of pressure, was only 16,000 cubic feet. So far as can be ascertained from the instant record, none of the gas furnished to plaintiff from defendant's "main line" was derived from the leased premises.

Unlike the usual oil and gas lease, production of oil and gas in *paying quantities* is not expressly required for the extension of the instant lease beyond the fixed term. Similar clauses, sometimes for convenience termed "thereafter" clauses, have been before this court in several cases. *South Penn Oil Co. v. Snodgrass et als.,* 71 W. Va. 438, 76 S. E. 961, 43 L. R. A. (N. S.) 848; *McGraw Oil & Gas Co. v. Kennedy,* 65 W. Va. 595, 64 S. E. 1027, 28 L. R. A. (N. S.) 959; *The Eastern Oil Co. v. Coulehan,* 65 W. Va. 531, 64 S. E. 836. In the first case, this court held that the discovery of oil within the specified term, though not in paying quantities, accompanied by a faithful, diligent and skillful effort to obtain production from the well in such quantities, operates to extend the lease beyond the specified period; and in *McGraw Oil Co. v. Kennedy, supra,* it was held that where gas is produced under an oil and gas lease, but not marketed and the lease, as here, provided for a payment of a stipulated sum for each well, the lessee by such payment may elect to prevent a forfeiture of the lease. In this connection regard must be had to the distinction between gas and oil wells. This distinction lies in the nature of the product and the provisions of the lease: First, oil may be stored in tanks, while gas can be stored only in the stratum where found; and second, a lessor's income from oil is a share of the oil produced, while the income from gas, except under recent leases, is based, as here, on a flat royalty for each well. 2 Summers, Oil and Gas, 140, 141. It has been held that a lessee cannot extend the term of the lease by the tender of royalties for a gas well unless the well is capable of producing. *United States v. Brown* (D. C.), 15 Fed. (2d) 565; *Nystel v. Thomas* (Tex. Civ. App. 1931), 42 S. W. (2d) 168; *Carroll Gas & Oil Co. v. Skaggs,* 231 Ky. 284, 21 S. W. (2d) 445; *Elliott v. Crystal Springs Oil*

*Co.,* 106 Kans. 248, 185 Pac. 692. As plaintiff, as well as defendant, urges the retention and not the abandonment of the instant lease, it is unnecessary to adopt or reject this latter rule.

Defendant's counsel seeks to establish his client's claim to the retention of the lease on the ground that the payment has been made of royalty for the present well. This payment necessarily was made on the assumption that the well produces gas which is marketed and sold, or the well "is shut in as a gas well." Having plugged the well, of its own accord, and paid the royalty on the premise that it is producing within the terms of the lease, surely defendant cannot now complain that the well is not a producing one. Only a casual reading of the lease discloses that the payments alone are insufficient to continue the lease beyond the specified period, because· another covenant thereof requires that defendant shall furnish to plaintiff domestic gas. Evidently, defendant here is seeking to continue this lease beyond the fixed term without complying with one of its essential covenants. A court of equity should not assist it in this endeavor. For discussions of provisions of oil and gas leases requiring lessee to furnish lessor with domestic gas, see generally, *Harbert* v. *Hope Natural Gas Company,* 76 W. Va. 207, 84 S. E. 770; L. R. A. 1915E, 570; *Pittsburgh & West Virginia Gas Company* v. *Richardson,* 84 W. Va. 413, 100 S. E. 220, 9 A. L. R. 86, and note at page 89; *Bassell* v. *West Virginia Central Gas Co.,* 86 W. Va. 198, 103 S. E. 116, 12 A. L. R. 1398.

In the first mentioned case, the lease provided that if gas is found on the premises, lessor shall have free gas for domestic purposes by making his own connections. The lessor, who was living on a tract of land other than the leased premises at the time of its execution, assigned the lease to plaintiff, and lessee assigned its interest under the lease to the defendant. Thereafter, plaintiff applied to defendant for domestic gas, and for three and a fraction years thereafter, his dwelling house, though situated on a tract other than the leased premises, was

connected with defendant's wells outside said premises. Upon being disconnected, plaintiff moved his line to one fed by the gas well on the original tract. Upon being cut loose, he then brought suit. This Court re-instated an injunction and required defendant to permit plaintiff to connect his private line with the well on the leased premises, or with its pipeline running thereto, as it may elect. This case evidently stands for the proposition that though a covenant for domestic gas runs with the land, it should be construed in the light of the practical construction given to the covenant by the parties, and a lessee cannot complain that the gas is not used on the leased premises, where the parties have so construed the covenant and the lessee's burden is not increased. In the instant case, the defendant acquiesced in the connection of plaintiff's line to its main line; and having closed the only producing well on the premises, it cannot refuse to furnish to plaintiff domestic gas from its main line, until this well is re-opened or the lease terminated. Though defendant could have surrendered the lease by the payment of one dollar, not having elected to do so, it is bound by the covenant of the lease.

We therefore are of opinion that plaintiff is entitled to domestic gas during the life of the lease, but defendant may elect to furnish the gas either from the leased premises or from some other source. We reverse the decree of the circuit court and direct that it be modified to provide that during the continuance of the lease defendant shall furnish plaintiff domestic gas from the leased premises, or some other source.

*Reversed and modified.*