CHARLES KIMBLE, *et al.*

*v.*

WETZEL NATURAL GAS COMPANY

(No. 10261)

Submitted Sept. 6, 1950.    Decided Oct. 24, 1950.

*Walter F. Ball, Jack S. Francis,* for appellant.

*I. M. Underwood,* for appellee.

LOVINS, PRESIDENT:

Charles Kimble and Blanche Kimble brought this suit in the Circuit Court of Wetzel County against Wetzel Natural Gas Company, a corporation, seeking an injunction to require defendant to furnish plaintiffs natural gas for heating and lighting purposes free of charge, in the amount of 150,000 cubic feet a year. No proof was adduced. The trial court perpetuated a temporary injunction theretofore granted, from which decree defendant appealed.

John H. Kimble and Minnie Kimble, his wife, on March 29, 1919, sold the surface of two tracts of land situate in Wetzel County to A. J. Gump and Dora Gump, reserving from the operation of the conveyance the oil and gas in and underlying the land. The record is not clear whether John H. Kimble and Minnie Kimble were the owners of the oil and gas in and underlying the tracts so conveyed by them, but it is a reasonable inference that they owned at least a one-half undivided interest in the oil and gas, and that James Murphy and Eva J. Murphy owned the other one-half undivided interest therein. John H. Kimble, Minnie Kimble, James Murphy and Eva J. Murphy leased one of the tracts of land to the defendant on July 9, 1924, for the purpose of drilling and operating for gas. The lease was for the term of one year and "as long thereafter as gas is produced and saved from the leased premises." Among others the lease executed by the Kimbles and the Murphys contained the following provision: "Whereas, the said first parties have this day leased to said parties of

the second part two adjoining tracts of land, it is agreed that said parties are to have gas free to the amount of 150,000 cubic feet of gas per annum for heat and light in one dwelling house on or off said land after the completion of one well on either tract by making their own connection at well or nearest pipe line of second party, at their own risk."

The defendant by writing dated February 18, 1925, assigned the lease executed by the Kimbles and the Murphys to the Browns Run Gas Company, a corporation, which drilled a producing well on one of the tracts of land. The Browns Run Gas Company, a separate corporate entity from the defendant, operated the lease until January 6, 1944, at which time in lieu of drilling a second well on the premises, it surrendered a part of the leased premises, but retained under lease one-half of the land surrounding the producing well mentioned above. Following the partial surrender of the lease, the Browns Run Gas Company, on April 22, 1944, assigned the lease and gas well to J. S. Church, Trustee, who is now the owner of the lease and well under a trust agreement.

Although plaintiffs allege that the gas well is still a producing well, the defendant denies it, and upon demurrer to the answer we are justified in saying that the well, according to the present record, is not producing at this time.

At some time not disclosed by the record the officers of the defendant permitted John H. Kimble and Minnie Kimble to take natural gas free of charge for heating and lighting a dwelling in the Town of Hundred from the defendant's service lines in said town; but the conditions and the circumstances surrounding such permission and the taking of the gas are not disclosed by the record.

John H. Kimble died on or about Jaunary 5, 1939, and the defendant permitted Minnie Kimble to continue to use free gas for heating and lighting purposes from its service line until her death on June 2, 1945.

Plaintiffs allege that after the death of Minnie Kimble until about February 22, 1949, defendant furnished plaintiffs free gas for their dwelling in the Town of Hundred, but whether it was the same house occupied by Minnie Kimble during her lifetime is not clear. Defendant denies, however, that it permitted plaintiffs to use natural gas free of charge from the date of Minnie Kimble's death, and alleges in its answer that it did furnish a supply of natural gas for "dwelling house purposes" until the month of April, 1946; that plaintiffs paid the usual and established charges and rates for natural gas in the Town of Hundred until the first of April, 1946; that thereafter plaintiffs refused to pay for said natural gas so furnished them; and that from that date until the institution of this suit defendant had charged plaintiffs for the use of natural gas in accordance with established rates, but that plaintiffs refused to pay such charges.

It is alleged in plaintiffs' bill and not denied that defendant disconnected plaintiffs' dwelling house from the gas service line on or about February 22, 1949.

The record does not clearly show whether John H. Kimble and Minnie Kimble died intestate. It would seem that at least John H. Kimble died intestate, as his heirs at law and their spouses by agreement bearing date the 21st day of March, 1939, appointed Joseph F. Kimble as their attorney in fact "to take possession and manage all of said property [undisposed of property belonging to the estate of John H. Kimble], with full authority to employ attorneys and such other agents as may be necessary, and convert all of said personal property into cash * * * and to transact all business pertaining to leases, rentals and royalties, but with no authority to convey any real estate without the consent of the parties hereto. * * *."

Apparently acting upon the power so granted, Joseph S. Kimble, as attorney in fact, by writing dated September 7, 1946, conveyed unto C. D. Kimble, evidently the same person as Charles Kimble, and Blanche Kimble "the right and authority to use free gas in the manner and to the extent provided in that certain lease for oil and gas

purposes made and executed on the 9th day of July, 1924, by John H. Kimble and Minnie Kimble, his wife, to the Wetzel Natural Gas Company a corporation * * *."

An unavailing effort was made by the parties to this suit to adjust this controversy, but having failed plaintiffs instituted this suit. Upon the filing of the bill of complaint, defendant filed its original and amended demurrer to said bill, which was overruled, and thereupon defendant filed its verified answer admitting some of the facts, but setting up as defenses that the covenant to furnish free gas was personal to John H. and Minnie Kimble, and that the well drilled on the leased premises was nonproducing. In the absence of proof defendant moved to dissolve the temporary injunction. Plaintiffs demurred to the answer, which having been sustained, the motion to dissolve the temporary injunction was overruled and the injunction perpetuated.

The disposition of this case depends upon the determination of three questions: (1) Was the covenant with John H. Kimble and Minnie Kimble personal, or did it run with the land, being thus transmissible by inheritance or assignment; (2) is the right to free gas predicated upon the production of gas from the leased premises, or was such right extinguished when such production ceased; and (3) is defendant estopped from denying plaintiffs the use of free gas?

Authorities in this and other jurisdictions seem to be in accord that a covenant to furnish gas free of charge contained in an oil and gas lease runs with the land covered by the lease. *Harbert* v. *Hope Natural Gas Co.,* 76 W. Va. 207, 84 S. E. 770. See Annotations 41 A. L. R., page 1370, 79 A. L. R., page 502; *Indiana Natural Oil & Gas Co.* v. *Hinton,* (Ind.), 64 N. E. 224.

The defendant contends that the covenant runs with the surface and not with the mineral estate where there has been a severance of the two estates, and cites in support of that contention the case of *Warfield Natural Gas Co.* v. *Small* (Ky), 138 S. W. 2d 488. We have not been

cited to any other authority for the proposition enunciated in the *Warfield Natural Gas Company* case. In the case of *Tennant* v. *Tennant,* 69 W. Va. 28, 70 S. E. 851, it was held that "In order that a covenant may run with the land, it must respect the thing granted and the act covenanted must concern the estate conveyed." We think that the covenant for free gas related to the mineral estate leased by John H. Kimble, Minnie Kimble, James Murphy and Eva J. Murphy, and likewise concerned the estate in the minerals. True, there had been a severance of the surface and mineral estates, as shown by the deed to A. J. Gump and wife, but such severance was provided for in the lease by the stipulation that free gas may be furnished on or off the premises. The covenant to furnish gas for heating and lighting purposes to one dwelling is a covenant running with the mineral estate. We do not mean to say that in all instances a covenant to furnish free gas would run with the mineral estate, but in the instant case it is clear that such covenant did run with the mineral estate.

One of the plaintiffs, Charles Kimble, as a son and one of the heirs at law of John H. Kimble, one of the original lessors, would have an interest as a cotenant in the oil and gas derived under the lease, and, as such, would have the right to demand compliance with the covenants contained therein. Moreover, his right to compel performance by the lessee in this suit is enlarged by the instrument of September 6, 1946, wherein Joseph F. Kimble, acting under the power of attorney dated March 21, 1939, transferred to the plaintiffs the right created by the free gas covenant.

The covenant for free gas is a part of the consideration of the lease. Thornton on Oil and Gas, Willis, Section 368. Where joint owners of land are the lessors in an oil and gas lease, the lessee may pay the royalties or rent to any one of such joint owners. *Id.,* Section 373.

Defendant's contention that its liability is secondary and may not be enforced until there has been demand upon and refusal by defendant's assignee to furnish free

gas is not tenable. The right created by the covenant being in the nature of a partial consideration for the lease, the original lessee remains liable for the breach thereof. "Although a lessee assigns the lease with the lessor's assent, he nevertheless remains liable on his express covenant to pay rent, notwithstanding rent is accepted from the assignee, unless the lessor expressly agrees to release him and substitute the new tenant in his stead." *Coal & Coke Co.* v. *Sharp,* 73 W. Va. 427, 80 S. E. 781.

The plaintiffs may enforce the specific performance of the covenant to furnish free gas unless the lease containing it is terminated by surrender, or the covenant is vitiated by some other circumstance. *Ketchum* v. *Oil Co.,* 121 W. Va. 503, 5 S. E. 2d 414.

Is the defendant excused from the performance of its obligation by the fact that the well on the leased premises is now nonproducing? On this question there are some conflicting expressions in the decided cases in this jurisdiction. In the case of *Harbert* v. *Gas Co., supra,* the following language is used: "Plaintiff, of course, had not the right to demand free gas from any of defendant's wells except the one on the Lyon tract [the land covered by the lease involved]; still, as long as defendant supplied him with free gas it was immaterial to him where it came from, provided it cost him no more to make his connection with the line or well. *But his right was limited to the wells on the Lyons land;* and he could demand that he be supplied with gas therefrom on making his own connection so long as he owned the surface of the Lyon tract and the wells thereon produced gas." (Emphasis supplied).

In subsequent cases, this Court has indicated that the free gas covenant could be satisfied by the furnishing of gas from wells outside the leased premises. *Bassell* v. *Gas Co.,* 86 W. Va. 198, 103 S. E. 116; *Ketchum* v. *Oil Co., supra.* In the *Bassell* case it was held that the lessee could not use compressors in the operation of gas wells in such a way as to interfere with the lessor's right to free gas, but

that the lessee could supply the gas to the lessor from sources other than the well on the leased premises. The *Ketchum* case turned on the question whether the lessee would be permitted to plug a producing well and retain. the lease by the payment of royalty but at the same time refuse to comply with the provision as to free gas. In the course of the opinion, the Court said: "Evidently, defendant here is seeking to continue this lease beyond the fixed term without complying with one of the essential covenants * * *. Though the defendant could have surrendered the lease by the payment of one dollar, not having elected to do so, it is bound by the covenant of the lease. * * * Plaintiff is entitled to domestic gas during the life of the lease, but defendant may elect to furnish the gas either from the leased premises or from some other source." *Ketchum* v. *Oil Co., supra,* 507, 508.

On former occasions this Court has given great weight to the practical construction placed upon the free gas. covenant by the parties to the lease. In *Harbert* v. *Gas Co.,. supra,* the Court had before it the question whether a lessee could be required to furnish gas free of charge in a building situated off the premises. In view of the fact that prior to the litigation there had been no question raised as to where the gas was to be used and the litigants. had placed a construction on the lease permitting the use of gas off the premises, the defendant was required to perform the covenant in accordance with its provisions. and the construction the parties had placed upon it. See note on the *Harbert* case, L. R. A., 1915E, page 570. In *Ketchum* v. *Oil Co., supra,* the defendant had acquiesced. for a period of time in the connection of plaintiff's line to its main line, which served wells other than that on the leased land. In the *Ketchum* case, the Court held that having closed the only producing well on the premises, the lessee could not refuse to continue to furnish plaintiff gas from its main line. In the instant case defendant continued to furnish free gas for a number of years after the assignment of the lease to the Browns Run Gas Company. We could infer from this course of conduct that the par-

ties intended that the covenant be performed by providing free gas from sources off the leased land, if performance could not otherwise be had.

The lease here considered does not contain any express provision or language from which it may be necessarily implied that the production of gas from the leased premises is prerequisite to the validity of the covenant to furnish the lessors free gas. In the absence of such provision or language in the lease, we do not think that the validity of the covenant to furnish free gas is dependent upon the production of gas from the land covered by the lease agreement.

We conclude that the covenant for free gas in the lease here considered must be complied with so long as the lease is in force, even though the lease has been assigned, and the defendant is no longer able to effect a surrender of such lease.

Estoppel *in pais* is not expressly urged as a ground for relief but we deem it proper to discuss that doctrine as being inapplicable.

The principle of equitable estoppel or estoppel *in pais* is applicable where one person has made a false representation or has concealed material facts, when he had knowledge of such facts, in dealing with a party ignorant of the truth of the matter, with the intention that the ignorant party should act upon the representation or concealment, and the party being ignorant of the truth is induced so to act to his damage. An application of that principle amounts to a preclusion in law which prevents a litigant from alleging or denying a fact, because of his previous inconsistent conduct or statements. See Black's Law Dictionary, 3d Ed., page 888. The conduct of defendant must be such as amounts to misrepresentation or concealment of material facts. *Atkinson* v. *Plum*, 50 W. Va. 104, 40 S. E. 587. In this case, in order to apply the doctrine of equitable estoppel against defendant, it should be established that plaintiffs were without information as to the matter to which the conduct of defendant relates,

*i. e.,* the furnishing of free gas; and must likewise be without convenient or available means of acquiring such information. *Atkinson* v. *Plum, supra.* See *Dye* v. *Pennsylvania Casualty Co.,* 128 W. Va. 112, 118, 35 S. E. 2d 865.

It may be true that defendant has continued to furnish free gas to Minnie Kimble and to plaintiffs after her death, and after the well on the leased land had ceased to produce gas. But that course of conduct on defendant's part did not amount to the concealment of any fact or facts from plaintiffs. Plaintiffs could have ascertained the provisions of the lease made by John H. Kimble and others. Likewise knowledge of the production or lack of production of gas from the well drilled under such lease was available to plaintiffs. Nor were plaintiffs damaged or deprived of any rights by defendant's conduct. We are of opinion that the principle of equitable estoppel cannot be invoked by plaintiffs in this suit.

We reiterate the rule announced in *Huffman* v. *Chedester,* 126 W. Va. 73, 27 S. E. 272, as follows: " 'Where the answer to a bill upon which a temporary injunction has been awarded, clearly, fully, fairly, distinctly and positively denies the material allegations of the bill, the trial chancellor, in the absence of proof to support the bill, should sustain a motion to dissolve the injunction, unless from the whole circumstances it appears that there is strong presumption of the plaintiff's equity and that the injunction should remain in force to preserve the *status quo* of the subject matter pending decision of the case on its merits.' *Snodgrass* v. *Mohr,* 115 W. Va. 507, 177 S. E. 190." See *Seal* v. *Gwinn,* 113 W. Va. 382, 168 S. E. 139; *Styber* v. *Lumber Co.,* 110 W. Va. 337, 158 S. E. 669; *Hayzlett* v. *McMillan,* 11 W. Va. 464.

But does the answer of the defendant meet the requirements of the above-stated rule? The answer admitted the execution of the lease containing the covenant here considered; and the production of gas on the premises. But it denied that the plaintiffs had the right to free gas because the covenant was personal to the original lessors, and denied that the well was a producing well. We think

that the denials contained in the defendant's answer present no defense to the plaintiffs' bill of complaint. Therefore, the demurrer to the answer was properly sustained. The demurrer having been sustained, there was no answer to the bill, and, therefore, the rule with reference to the dissolution of a temporary injunction was not applicable.

The decree perpetuates the temporary injunction without proof. The record is not clear whether defendant elected to stand on its answer, and does not show that defendant either requested or was accorded the right to amend. No contention is made here with reference to the amendment of defendant's answer. With that in mind, we think it was not error to perpetuate the injunction without the taking of proof; but the injunction, as perpetuated, should have provided that upon a surrender of the lease the injunction would be dissolved. Accordingly, the decree of the Circuit Court of Wetzel County is modified so that upon the surrender of the lease the injunction pronounced by the trial court will be dissolved, and, as modified, the decree is affirmed.

*Modified, and, as modified, affirmed.*