399 S.E.2d 187

Emmit BREEDLOVE and Wilma Breedlove, his wife; Jack Cooper and Geneva Cooper, his wife; Sadie Dingess, widow; Donald E. Pack and Oneta J. Pack, his wife,

v.

PENNZOIL COMPANY, Defendant and Third–Party Plaintiff Below, and Adobe Oil and Gas Corporation,

v.

GUYAN OIL COMPANY, INC., and Newmont Oil Company, Third–Party Defendants Below.

and

Hazel WHITTEN, Edward Gillenwater, Thelma Gillenwater, Harry Lovejoy, and Sadako Lovejoy, Plaintiffs Below,

v.

PENNZOIL COMPANY and Adobe Oil and Gas Corporation, Defendants Below; Pennzoil Company, Third-party Plaintiff Below,

v.

GUYAN OIL COMPANY, INC., and Newmont Oil Company, Third–Party Defendants.

Nos. 19496, 19496–1.

Supreme Court of Appeals of West Virginia.

Nov. 9, 1990.

---

David C. Shepler, Kay, Casto, Chaney, Love & Wise, Charleston, for Emmit Breedlove, Wilma Breedlove, Jack Cooper, Geneva Cooper, Sadie Dingess, Donald Pack and Oneta Pack.

J. Michael Weber, Davis, Bailey, Pfalzgraf & Hall, Parkersburg, for Pennzoil Co.

John McFerrin, Charleston, for Hazel Whitten, Edward Gillenwater, Thelma Gillenwater, Harry Lovejoy and Sadako Lovejoy.

Joseph Stevens, Hamlin, for Adobe Oil & Gas Corp.

Wesley F. Agee, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, for Guyan Oil Co., Inc.

WORKMAN, Justice:

At issue in this case is whether the Circuit Court of Lincoln County correctly interpreted the provisions of several leases involving mineral rights when it determined that the lessees were not obligated

to furnish free gas for household use to the appellant lessors. Having reviewed the subject language of the leases, we conclude that the covenant to provide free gas for household use was expressly dependent on the lessees' production of gas from the leased premises. Since gas has never been produced on the leased premises we concur with the circuit court's conclusion that the lessees are under no obligation to provide free gas, and accordingly affirm the court's granting of summary judgment to the appellees.

Each of the appellants owns the surface of a tract of land located in Lincoln County, West Virginia, and in turn leases the mineral rights on their respective tracts of land to the appellee oil companies. There are seven actual leases involved, the validity of which are not at issue. Each lease contains separate provisions for the payment of royalties for oil and gas produced from the premises. In addition to royalties, the lessors were to receive free oil and gas for domestic use. The provision of free oil is not at issue, only the furnishing of free gas. The exact language of each of the seven leases providing for free gas is stated as follows in each of the respective leases.

> Hazel Whitten: ... the parties of the first part are to have from said premises all gas and oil free of costs for home and domestic purposes....

> Edward and Thelma Gillenwater: It is agreed that the parties of the first part are to have free of costs oil and gas for household and domestic purposes from any found on the land.

> Harry and Sadako Lovejoy: ... and the parties of the first part are to have free of cost from said premises all oil and gas for home and domestic purposes.

> Emmit and Wilma Breedlove: The Lessors shall have gas for the dwelling from any gas well on said premises free by making connections.

> Jack and Geneva Cooper; ... and the parties of the first part are to have free of cost from said premises all oil and gas for home and domestic purposes.

> Sadie Dingess: ... and the parties of the first part are to have free of cost from said premises all oils and gas for home and domestic purposes.

> Donald E. and Oneta J. Pack; ... and the parties of the first part are to have free of cost from said premises all oils and gas for home and domestic purposes.

■ The parties have stipulated that there has never been any production of natural gas under any of the leases. The record suggests that from 1950 to approximately 1987, the lessees or their assigns provided free gas for domestic use in an uninterrupted fashion. The current dispute arose when the lessees terminated the provision of such free household gas apparently in 1987 when they assumed the oil-producing operation on the appellants' properties.[1] When this dispute reached the Circuit Court of Lincoln County, the court found the pertinent language in each of the leases to be unambiguous and granted the appellees' motion for summary judgment by holding that production of oil from the leaseholds did not obligate the lessees to furnish free gas when there had never been production of gas from the premises with the exception of casinghead gas.[2]

These two cases were consolidated to resolve two related issues: first, whether the leases at issue expressly predicate the lessors' right to receive free gas upon the production of gas from the leased premises and second, whether the thirty-seven year

---

1. Although the appellees in this case may actually be assignees of the original leases as opposed to actual lessees, in the interest of avoiding unnecessary complication we will nonetheless refer to the current oil-producers as the lessees.

2. Casinghead gas is gas which may be recovered as a by-product of operating an oil well. This type of gas, which is "produced in small quantities along with oil, and used for operating the well[s] on the premises ..." "does not render the lessee in such a lease liable to the lessor for annual gas rentals provided for in such lease." *Prichard v. Freeland Oil Co.*, 75 W.Va. 450, 454–55, 84 S.E. 945, 947 and Syl. Pt. 2, in part (1915). The production and use of casinghead gas does not convert oil wells into gas wells. *See Locke v. Russell*, 75 W.Va. 602, 84 S.E. 948 (1915); *accord* E. Kuntz, *A Treatise on the Law of Oil and Gas* § 53.6 (1990).

practice of providing free gas for household-purposes requires that the lessees continue to supply the lessors with free gas. Appellants contend that the lessees are obligated to provide free gas based on their two-prong argument that: 1) the free gas clause is part of the consideration of the lease; and 2) production of gas on the leased premises is not a prerequisite to the covenant to provide free gas for domestic purposes. The lessees do not dispute appellants' first argument in principle and in fact agree with the general propositions that the free gas clause is part of the rent in an oil and gas lease and that the covenant to provide free gas is a valuable consideration of a lease for oil and gas purposes. *See United Fuel Gas Co. v. Battle,* 153 W.Va. 222, 167 S.E.2d 890, *cert. denied sub nom. United Fuel Gas Co. v. Haden,* 396 U.S. 116, 90 S.Ct. 398, 24 L.Ed.2d 309 (1969). The lessees argue, however, that the rental obligation to provide free gas is not invoked until gas is first produced on the property when the lease makes the covenant to provide free gas contingent on production from the demised premises.

◾ The issue of whether a "free gas" clause is contingent upon production from the leased premises is admittedly "a matter of construction to be determined from the language of the contract." W. Summers, *The Law of Oil and Gas* § 587 (1958). Without acknowledging the obvious disparity of the lease terms at issue from those analyzed in *Kimble v. Wetzel Natural Gas Co.,* 134 W.Va. 761, 61 S.E.2d 728 (1950), appellants rely on the following excerpt from that case:

The lease here considered does not contain any express provision or language from which it may be necessarily implied that the production of gas from the leased premises is prerequisite to the validity of the covenant to furnish the lessors free gas. In the absence of such provision or language in the lease, we do not think that the validity of the covenant to furnish free gas is dependent upon the production of gas from the land covered by the lease agreement.

We conclude that the covenant for free gas in the lease here considered must be complied with so long as the lease is in force, even though the lease has been assigned, and the defendant is no longer able to effect a surrender of such lease. *Id.* 134 W.Va. at 769, 61 S.E.2d at 733. The language from which the Court determined that the *Kimble* lease did not contain an express or implied provision predicating free gas on the production of gas from the leased premises provided that

'[w]hereas, the said first parties have this day leased to said parties of the second part two adjoining tracts of land, it is agreed that said parties are to have gas free to the amount of 150,000 cubic feet of gas per annum for heat and light in one dwelling house on or off said land after the completion of one well on either tract by making their own connection at well or nearest pipe line of second party, at their own risk.'

134 W.Va. at 762–63, 61 S.E.2d at 730.

◾ The language in the leases at issue pertaining to provision of free gas for domestic purposes differs greatly from that in the *Kimble* lease. Each of the seven leases involved in this case expressly condition the provision of free gas on the production of gas from the leased premises by use of the terms "from said premises," "from any found on the land," or "from any gas well on said premises." We view the use of this language in conjunction with the covenant to provide free gas as evidence that the obligation to provide free gas does not arise until such time as gas is actually produced from the leased premises. *See* W. Summers, *supra,* at § 587. The *Kimble* case states unequivocally that its ruling concerning the non-dependency of supplying free gas on gas production *only* applies when "[t]he lease ... considered does not contain any express provision ... that the production of gas from the leased premises is [a] prerequisite to the validity of the covenant to furnish the lessors free gas." 134 W.Va. at 769, 61 S.E.2d at 733. The *Kimble* ruling, *by its own language,* cannot control this case given the explicit language in the seven subject leases which connects the covenant to on-premises pro-

duction. Accordingly, we hereby rule that when an oil and gas lease expressly or impliedly conditions the covenant of free gas for domestic use on the production of gas from the leased premises, the covenant cannot be enforced absent on-premises gas production because the lessors' right to receive free gas does not vest until such time as gas is actually produced.

■ Had natural gas been produced at any point in time by the lessees and then subsequently terminated, the appellants could argue that they were entitled to a continuing supply of free gas as this Court explained in *Battle.*

> It is well established by numerous decisions of this Court that when a lessee under an oil and gas lease produces gas from the well the right to produce such gas becomes a vested right and when the gas is extracted the title to the gas vests in the lessee and the consideration or royalty paid for the privilege of search and production is rent for the leased premises. This Court has also held that free gas for the lessor is part of the consideration of a lease for oil and gas purposes; and that the covenant to furnish free gas runs with the land and may be enforced.

153 W.Va. at 231–32, 167 S.E.2d at 896–97 (citations omitted). In *Battle,* we inferred that it is the vesting of the right to extract gas which in turn triggers the obligation to provide free gas. This principle that the duty to provide free gas is inextricably intertwined with the vesting of gas rights has evolved from several earlier decisions. This Court commented in *Harbert v. Hope Natural Gas Co.,* 76 W.Va. 207, 84 S.E. 770 (1915), that a lessor had no right to demand free gas except from gas found on the leased property. *Id.,* 76 W.Va. at 211, 84 S.E. at 772. This rule was later relaxed somewhat when the Court was faced with a lessee who sought to plug a producing well and thereby discontinue supplying the surface owner with free gas while continuing to make royalty payments. Faced with that situation, this Court "held that having closed the only producing well on the prem-

ises, the lessee could not refuse to continue to furnish plaintiff gas from its main line." *Kimble,* 134 W.Va. at 769, 61 S.E.2d at 733 (discussing *Ketchum v. Chartiers Oil Co.,* 121 W.Va. 503, 5 S.E.2d 414 (1939)).

Although this Court has modified its original position that the covenant to provide free gas is necessarily limited to providing gas from the leased premises, we have not altered our judgment that where the "free gas" clause is contingent upon production it is gas produced on the particular leasehold which triggers the operation of the "free gas" clause. Since gas has never been produced from the subject leaseholds, appellants' right to receive free gas under the leases at issue remains unvested. Absent a vesting of these rights, which can only occur by production of gas from the leaseholds, the lessees are not obligated to provide free gas to the appellants.

■ As an alternative position, appellants urge this Court to require the lessees to resume provision of free gas under principles of practical construction and equitable estoppel given the thirty-seven year practice of supplying appellants with gas at no cost for domestic use. The doctrine of practical construction can only be employed where the writing at issue is ambiguous. *See McShane v. Imperial Towers, Inc.,* 165 W.Va. 94, 267 S.E.2d 196 (1980). The determination of whether a contract is ambiguous is a question of law. Syl. Pt. 1, *International Nickel Co. v. Commonwealth Gas Corp.,* 152 W.Va. 296, 163 S.E.2d 677 (1968). The circuit court examined the language in the leases regarding the covenant to provide free gas and found the same to be clear and therefore, not ambiguous. *See Columbia Gas Transmission Corp. v. E.I. du Pont de Nemours & Co.,* 159 W.Va. 1, 217 S.E.2d 919 (1975). Finding no error in this ruling, the doctrine of practical construction cannot be applied to this case as the leases were determined to be lacking in ambiguity.

■ This Court has previously rejected the argument that the doctrine of equitable estoppel should be applied to prevent a lessee from discontinuing its supply of free

gas to lessors. In *Kimble* we explained that

> in order to apply the doctrine of equitable estoppel against defendant [lessee], it should be established that plaintiffs [lessors] were without information as to the matter to which the conduct of defendant relates, i.e., the furnishing of free gas; and must likewise be without convenient or available means of acquiring such information.

134 W.Va. at 769, 61 S.E.2d at 733. The lessors in this case have stipulated that there has never been any production of natural gas on the leased premises. This stipulation establishes that no concealment occurred regarding the non-production of gas. The absence of such concealment or other false representation concerning gas production prevents application of the doctrine of equitable estoppel to this case. *See id.*

 We note with approval at least two cases that characterize the conduct of a lessee who provides free gas, although not required to under the terms of the lease, as an accommodation and further recognize that such accommodation does not subsequently estop the lessee from later extinguishing the free gas supply. *See Cranston v. Miller*, 208 Ark. 156, 185 S.W.2d 920 (1945); *Ludolph v. Tuel and Thoenen, Inc.*, 6 Ohio Misc. 117, 214 N.E.2d 696 (1965). While the lessees in this case have furnished the lessors with free gas for a lengthy period of time, the gas was provided as an accommodation because they acted without a concomitant legal duty to supply such gas. The doctrine of equitable estoppel cannot be invoked by such accommodation and accordingly, the lessees are not estopped from terminating the lessors' supply of free gas for domestic use.

Based on the foregoing, we hereby affirm the ruling of the Circuit Court of Lincoln County.

Affirmed.