U. S. SEAL, *Receiver v.* DREAMA R. GWINN, *Adm'rix., et al.*

(No. 7440)

Submitted February 14, 1933.   Decided February 21, 1933.

*H. L. Van Sickler,* for appellant.
*Price & McWhorter,* for appellee.

HATCHER, JUDGE:

In this proceeding the plaintiff (below) enjoined the prosecution of an action in detinue which had been brought by the defendant (below) to recover from him two United States Government bonds for $1,000 each, belonging to her decedent's estate.   Some time later the defendant moved to dissolve the injunction upon the bill and its exhibits, and filed an answer denying the allegations of the bill which warrant relief in equity.   The motion was overruled and the defendant appealed.

O. D. Massey was executor and trustee of the will of Mrs. Josephine R. Gwinn, who died in 1924, leaving an estate approximating $15,000, and practically free from debt; Massey was also cashier of the Alderson National Bank.   He made a settlement of his accounts as executor before a commissioner on January 14, 1928, showing the administration of all of Mrs. Gwinn's estate ($13,121.20) except the two bonds which

were excluded from the settlement on the ground that they had not then matured and under the will the executor was to hold them until maturity. He departed this life in September, 1931, and shortly afterwards the plaintiff was appointed receiver of the bank and the defendant was appointed administratrix of the Gwinn estate. The receiver found in the bank a demand note for $2,000 dated July 10, 1931, signed "Estate of Josephine R. Gwinn by O. D. Massey, Ex'r. & Trustee" with the two bonds deposited as collateral security for its payment. The administratrix demanded the bonds of the receiver and upon his refusal to surrender them, the action in detinue ensued.

Massey's checking account in the bank as executor, together with his settlement as executor before the commissioner are filed with the bill. The checking account shows a number of large withdrawals made from time to time prior to the settlement, amounting in all to over $8,000, which do not appear in the settlement. Those two papers, in connection with an enigmatic deposit slip for $8,380 in favor of the estate, dated December 13, 1927, (just a month before the settlement) demonstrate that Massey had been using the executorial funds for some purpose not connected with the estate, and that before his settlement with the commissioner he placed the $8,-380 to the credit of the estate to cover his peculations. The bill admits that Massey appropriated to his own use $930 of the $2,000 represented by the above note, but alleges that Massey borrowed the $8,380 for the estate, paying back by December 19, 1927, "in various ways" (not named) all of said loan except $1,070; that this remainder together with the $930, above referred to, were evidenced by a note (not exhibited) of $2,000 executed by Massey for the estate dated January 6, 1928; and that the note now held by the bank is a renewal of the note of January 6, 1928. Nothing relating to the deposit of the $8,380, nor to the alleged unpaid remainder of $1,070 on money borrowed, nor to the first note of $2,000 was reported by Massey in his settlement as executor on January 14, 1928.

The brief for the defendant says: "The sole question for the present determination is, does the estate owe the $2,000? If it does, of course the bonds are liable for its liquidation."

(More accurately stated, the question is, does the estate owe $1,070?) Again, the brief says, Massey's "juggling" with the funds of the estate was unlawful, and "the bank is legally presumed to have had notice of his authority and limitations." We cannot accept that statement in its entirety. Massey, as executor, was as distinct in law from Massey, as cashier, as if the executor had been one person and the cashier another. The bank was chargeable with notice of Massey's limitation when he, as executor pretended 'to borrow money from it; but the bank was not so chargeable when he as executor drew on the executorial deposit in the bank. It was not bound by his acts committed nominally as cashier, but really in his own behalf as executor and against its interest. *Bank* v. *Aler*, 92 W. Va. 313, 114 S. E. 745.

The case of the plaintiff in brief is this: Massey as executor misappropriated the funds of the estate, then as cashier restored those funds with the bank's money; the will conferred no authority to borrow money and the notes of the estate accepted by him as cashier were illegal; by that transaction, however, the estate received gratuitously $1,070 of the bank's money, and the bank should be permitted to offset that sum against the demand of the defendant for the bonds; and since that cannot be done in detinue, equity should take jurisdiction and permit the off-set.

The plaintiff cites *Meyer* v. *Meyer*, 60 W. Va. 473, 56 S. E. 209, 211, and like cases which hold that despite denials of the material allegations of a bill upon which an injunction is based, if it appears from the entire case "that there is a strong presumption or a strong probability of the existence of plaintiff's equity," it is error to dissolve an ancillary injunction in advance of a hearing on the merits.

The deposit slip of December 13, 1927, is exhibited as establishing a strong presumption or probability that Massey transferred the bank's money to the estate; but that slip shows simply a deposit of checks as follows:

"K. D. M......................3880.00
Est. pro......................4500.00
_____

Total ...................8380.00"

The letters "K. D. M." and the phrase "Est. pro" are not

explained, and are meaningless to us. If we assume that "Est. pro" means *for the estate,* those words *ex vitermini* do not import an appropriation of the bank's money. So there is no proof tending to establish plaintiff's equity. Some three months elapsed after the injunction was granted before the motion to dissolve was overruled. Plaintiff had ample time to support his bill and his failure will be taken to indicate his inability to do so.

The order below is accordingly reversed and the cause remanded.

*Reversed and remanded.*