THE LESLIE COMPANY, *et al.*

*v.*

THE COSNER COAL COMPANY, *et al.*

(No. 10010)

Submitted April 14, 1948. Decided June 8, 1948.

*Steptoe & Johnson, James M. Guiher* and *Edward W. Eardley,* for appellants.

*Parrack, Snyder & Wehner, F. E. Parrack* and *Charles V. Wehner,* for appellees.

Fox, JUDGE:

On December 27, 1945, L. C. Halbritter was the owner of the Upper Freeport seam of coal in several tracts of land situated in Preston County, and on that date conveyed the said coal to R. Doyne Halbritter and Edward W. Eardley, Trustees, to secure to John R. Dawkins the payment of $7,400.00, advanced by said Dawkins to said Halbritter, pursuant to the terms of a then contemplated agreement and coal lease between The Leslie Company, a corporation, and Cosner Coal Company, a corporation; such sum to be repaid to the said Dawkins, by Cosner Coal Company, out of royalties accruing to said The Leslie Company, under said lease, at the rate of six cents per ton for all coal mined by said Cosner Coal Company on the property covered thereby, such payment to be not less than $75.00 in any one month.

The coal lease referred to in the deed of trust, aforesaid, was not in fact executed until the 7th day of January, 1946, the property leased having, in the meantime, been conveyed by L. C. Halbritter and wife to The Leslie Company, a corporation. The record is silent as to the date of the conveyance from Halbritter to The Leslie Company, but from plaintiff's bill we learn that, at the date of said coal lease, The Leslie Company was the owner of the property leased thereby.

On January 7, 1946, The Leslie Company leased to the Cosner Coal Company certain parcels of coal aggregating approximately 400 acres, which lease included the properties conveyed by the deed of trust aforesaid. It is provided in the lease that the same shall continue until "all of said coal is mined and removed"; and that the "Lessee agrees to pay to the Lessor a royalty of twelve (.12) cents per net ton of two thousand (2,000) pounds, for each ton

of merchantable coal mined and removed from said mine." There are many other provisions in the lease, among which are the following: (1) providing for a report on coal mined; (2) provisions for forfeiture thereof for failure to pay royalties, when due, or the failure of the lessee to comply with other requirements of said lease, provided twenty days notice of intention to forfeit the lease has been given; (3) provisions respecting method of operation, especially in the keeping of an up to date map of the mine; (4) for the keeping of a registered mine foreman in the mine at all times; (5) requirements respecting headings, ribs and barriers; (6) a provision that one-half the royalty provided for in the lease shall be paid to John R. Dawkins, under the terms of the deed of trust hereinbefore mentioned. Other provisions of the lease will be hereinafter more specifically dealt with.

Plaintiff's bill was filed, in the Circuit Court of Preston County, at September Rules, 1947, and alleged, among other things, the execution of the lease contract aforesaid, the same being filed as exhibit with the bill. There was an allegation of improper mining practices, especially with respect to the failure to keep a registered mine foreman in the mine at all times; failure to operate the mine by a method planned by a registered engineer; failure to drive all working places from center points, rather than by what is termed the block system; failure to drive the headings of the mine through the property so as to permit the loading of coal on the main line of the Baltimore & Ohio Railroad Company to increase production; failure to keep mine maps up to date, and make proper reports of production. In addition to these allegations in respect to the operation of the mine, there are two important allegations which deserve special attention: one, that it was an implied condition of the lease that the mine should be operated in a workmanlike manner, for the purpose of removing all the marketable coal, and that, in violation of such implied condition, the lessee had used a mining machine which cut the coal at the top of the seam so as to leave from eight to ten inches of marketable coal attached

to the roof of the working places in the mine, and that as a result of such action a waste of coal occurred, and the operation of the mine was rendered unsafe, in that said thin layer of coal would in time deteriorate and fall, and pull down the roof in the mine. There is, also, an allegation that on May 8, 1947, lessee, being then in default in the payment of royalties, the lessor gave notice to the lessee that the said lease had become forfeited, and that the lessee failed and refused to surrender the property to the lessor, and had continued in the possession and operation of said premises in violation of the terms of the lease. There is a further allegation that "the continued operation of said mine by said defendant (lessee) is doing to the plaintiff irreparable harm and injury, and is destructive to plaintiff's said property". There is no definite and specific allegation concerning the manner of operation of the mine which caused such irreparable harm and injury; merely the allegation quoted above.

On September 20, 1947, a temporary injunction was awarded, by the Circuit Court of Preston County, which restrained and inhibited the Cosner Coal Company, the lessee, from continuing to operate the property described in the lease aforesaid, until the further order of the court, upon the execution by the plaintiff of a bond with security to be approved by the Clerk of said Court, conditioned to pay costs and damages should said injunction be dissolved. The penalty of the required bond was not stated in said order, but apparently an injunction bond was given by the plaintiff, and the injunction became effective on or about the 22nd day of September, 1947.

On September 27, 1947, the Cosner Coal Company, lessee, aforesaid, following a notice that a motion to dissolve said injunction would be made on September 25, 1947, filed the joint and several answer of itself, and of Nicholas R. Raschella and Miles W. Bell, alleged in the plaintiff's bill to be in active charge of the operation on the leased premises, which said answer, in our opinion, fully, plainly and positively denied all the material allegations of the bill on which the injunction was founded,

except the allegation of the bill with respect to leaving in the mine the top strata of the coal, and to this point we will hereafter give specific attention. It would seem that no good purpose would be served by going into minute detail as to the several points of denial contained in the answer of the defendants. There is a denial that there was a failure to provide mine maps, and allegations that they were kept up to date; that there had been any forfeiture on account of failure to pay royalties, and an allegation that on receipt of the notice alleged in plaintiff's bill, all past due royalties were paid within the twenty days provided for in the lease, there being no other grounds for forfeiture mentioned in such notices. It is admitted that the notice, of May 8, 1947, was received, but a denial that any forfeiture occurred by the mere giving of the notice, and it is only necessary to refer to the rule that equity will not enforce a forfeiture. There is a denial of the allegation in the bill that the operation of the mine was being conducted in such a way as to cause irreparable harm and injury to the lessor. There is an admission that it was contemplated, and an original plan for the operation did include the loading of coal at the railroad siding, but an allegation that the failure to carry out this plan was due to the fact that the coal in the vicinity of the contemplated railroad siding could not be mined practicably, due to a dip in the same, and that such operation would necessitate the construction of approximately thirty-five hundred feet of track, which would not be practical. It denies that the mine was conducted without the supervision of a registered mine foreman. The answer also denies that the mine was operated in such manner as to waste the property of the plaintiff, or to render the operation of said mine unsafe. It admits, however, that the mine was being operated in such a manner as to leave top coal adhering to the slate roof of the mine, and that this was done because the coal left in the mine was not of a marketable character, the same having ash and sulphur content too high to be acceptable to the defendant's customers, and which content was so high that when the same was mixed with other coal of the seam, it rendered

the entire seam unmarketable; it also avers that it was essential for the safety of the employees, and economical and profitable mining, that this coal be left in the mine, and that the same was so left according to instructions received by the lessee from its mining engineer. In general, but subject to the exceptions noted above, the answer contains what we think constitutes a specific denial of any violation of the terms of the lease, and such denial, supported by the affidavits of three persons in support thereof, was considered by the court on the motion to dissolve the injunction aforesaid. Criticism of the answer as evasive and otherwise insufficient do not commend themselves to us as substantial. The answer satisfied the Court below, and we approve its ruling thereon.

On the bill and the answer aforesaid, and the affidavits filed in support of said answer, the Circuit Court of Preston County, on September 22, 1947, entered an order dissolving the injunction awarded by it on September 20, 1947, but attached thereto this condition: "but the dissolution of this injunction is not to be effective until the Defendants or someone for them shall execute a bond before the Clerk of the Circuit Court of Preston County, West Virginia, with surety to be approved by said Clerk, conditioned to pay all damages that may be incurred by said plaintiff, by reason of the dissolving of this injunction order, should it hereafter appear that the same was improperly dissolved; this bond to be in the amount of Twenty-five Thousand ($25,000.00) Dollars. The Court does not at this time determine the merits of said cause."

The defendants, being dissatisfied with the condition attached to the order of dissolution, filed their petition for an appeal from and supersedeas to the order aforesaid, the prayer of their petition being that this Court award an appeal from and supersedeas to that part of the decree of the Circuit Court, aforesaid, which required the defendants to execute the bond of $25,000.00 therein mentioned and required. On October 27, 1947 we awarded the appeal and supersedeas prayed for.

It is apparent that the only question we may consider on this appeal is the propriety of the condition attached to the order dissolving the injunction aforesaid, requiring the execution of the bond therein stipulated as a condition to making effective the dissolution of the temporary injunction awarded in this cause. The appellee has not assigned cross-error to the action of the court in making the dissolution of the injunction possible, although in its brief it contends that it was error on the part of the trial court to dissolve the said injunction.

We are of the opinion that it is settled law in this State that a .verified answer of a defendant which fully, fairly, plainly, .distinctively, and positively denies the allegations of the bill on which an injunction was granted, and the material allegations of the bill are not supported by proof other than the affidavit verifying the truth of its allegations, requires the dissolution of an injunction where upon proper notice of motion therefor, a court is called upon to act. *Hayzlett* v. *McMillan,* 11 W. Va. 464; *Schoonover* v. *Bright,* 24 W. Va. 698; *Kester* v. *Alexander,* 47 W. Va. 329, 34 S. E. 819; *Kessel·* v. *Cohen,* 104 W. Va. 296, 140 S. E. 15; *Seal* v. *Gwinn,* 113 W. Va. 382, 168 S. E. 139. In the case last cited, it is held that: "If the answer denies the allegations in the bill upon which an injunction is based, it is the general rule that the injunction will be dissolved unless there appears from the whole case a strong presumption or probability of plaintiff's equity. *Meyer* v. *Meyer,* 60 W. Va. 473, 56 S. E. 209." We see nothing in this case which would call for any departure from the rule . laid down by the cases cited above, and there would appear to be no special equitable considerations such as require a modification of that rule as applied to the case at bar as was indicated in *Seal* v. *Gwinn* might be .done. Looking at the answer, from every reasonable viewpoint, we are of the opinion that it does expressly deny the material allegations of the bill, except on the one point, mentioned above, relating to the failure to mine all the coal, including the upper strata admittedly left in the mine.

The undenied allegation of plaintiff's bill is that the

lessee operated the mine in such manner as to leave in the mine a part of the coal which, of course, not only reduced the tonnage of production, but, as alleged in the bill, menaced the safety of the mine. But the answer of defendant is that this coal, left in the mine, is unmarketable; and taking the lease agreement, plaintiff's bill, and the answer, we can not at this time determine whether the lessee was at fault, or whether it was justified in its method of operation. The lease provided that it shall continue until "all of said coal is mined and removed". In the same lease it is provided that the lessor shall be paid certain royalty for each ton of "merchantable coal mined and removed from said mine". In plaintiff's bill, it is alleged that it was an implied condition of the lease that the mine would be operated in workmanlike manner, for the purpose of "removing all marketable coal". It would appear, therefore, that what all the parties to the lease had in mind was that only coal that was merchantable or marketable was required to be removed or paid for. In *Atwater & Co.* v. *Collieries Co.,* 119 W. Va. 549, 195 S. E. 99, it is stated in the body of the opinion, as an approved quotation from *Big Vein Pocahontas Co.* v. *Browning,* 137 Va. 34, 120 S. E. 247, that: " 'merchantable coal' means coal which was ordinarily used, for sale, and could be usually sold at a profit, but did not mean coal which could be sold at a profit under all conditions." The expressions . "marketable coal" and "merchantable coal" should for all general purposes be considered synonymous. 26 Words and Phrases 534, and 27 Id. 102. The point can only be settled by a legal determination of the question of whether the coal left in the mine was merchantable or marketable, and if not, whether the manner in which it was left in the mine followed safe and approved methods under the circumstances. All this can only be determined on the final hearing of the cause, and as we view the situation at this time, it does not afford justification for the award of an injunction, the effect of which might be to stop operations entirely, to the prejudice not only of plaintiff, but to the greater prejudice of the defendants, whose money is invested in the operation, and to whom

an extended stoppage of operations might prove disastrous. In *Tennant* v. *Kilcoyne,* 120 W. Va. 137, 196 S. E. 559, it was held: "A temporary injunction should be refused, or when granted should be dissolved on motion, when the injury to the plaintiff by its refusal is slight as compared with the damage which would be done to the defendant by granting it, if defendant should finally prevail, or when the effect of the injunction would be to accomplish the whole purpose of the litigation without trial on the merits." We think that case bears strongly on the case at bar. It is not apparent to us that the plaintiff would be greatly damaged or suffer hardship should it be determined, on a trial of the merits of the case, that the lessee was at fault in the manner in which he operated the mine, in respect to leaving a portion of the coal therein. On this point and the consideration which should be given to it, see *Meyer* v. *Meyer,* 60 W. Va. 473, 56 S. E. 209. There is nothing in the bill to indicate that if such should be the result of a trial of the merits of this cause, plaintiff would not have an adequate remedy for the collection of such damages as might have accrued. There is no allegation of insolvency, and, considering the production, the royalty on tonnage of the coal left in the mine would not amount to any great sum within the period reasonably required to effect a final determination of this cause on its merits. We do not think that *Pardee* v. *Lumber Co.,* 70 W. Va. 68, 73 S. E. 82, and other cases subsequent to that case on the question of injunction against removal of timber, is applicable here. The rule now followed in West Virginia with respect to injunction against cutting and removal of timber is based upon the peculiar nature of that natural resource, and, generally speaking, where damage can be ascertained with reasonable accuracy, and the guilty person is solvent and responsible, a remedy at law is always available. As can readily be seen, other questions may arise, with respect to damage done to the mine, which would raise a doubt as to whether the remedy at law would be complete and adequate; but on the record before us, and without development of the merits of the case, we can not say that there is a reason-

able probability that the plaintiff would not have an adequate remedy at law.

The action of the trial court in attaching a condition to the dissolution of the temporary injunction, by requiring the execution of a bond for $25,000.00, upon conditions named therein, was apparently based upon the holding of this Court in *Campbell* v. *Point Pleasant & Ohio River R. R.*, 23 W. Va. 448, wherein it was held: "Courts of equity may substitute a bond of indemnity for an injunction, if the ends of justice will thereby be promoted, and especially if any public interest will suffer by continuing the injunction in force pending the litigation.", and that: "It is within the ordinary power of a court of equity to accept such a bond when proceeding according to the general principles of equity." We do not, by our decision herein, mean to depart from the ruling in that case. No doubt, in a proper case, a court of equity would be entirely justified in dissolving a temporary injunction, pending a hearing on the merits of a cause, and in requiring an indemnity bond, especially if any public interest be involved. In the case above cited, the defendant railroad company appeared in court and asked for dissolution of a temporary injunction, upon the giving of an indemnity bond, and the court permitted this course to be followed. The railroad company was constructing its lines through the City of Point Pleasant, from which construction and operation it was apprehended that damage would accrue to the owners of adjoining property, and that they would be entitled to compensation for such damages under the provision of the Constitution of this State. This was the situation under which an indemnity bond was permitted. It may have been permitted in other cases, of the same or of a different nature, but a search of the authorities fails to disclose where the rule has ever been followed, or if followed, has been questioned in this Court. We do not think the situation in the case at bar furnishes justification for the requirement of an indemnity bond, such as was permitted in the *Campbell* v. *Point Pleasant etc. R. R.* case. In that case there was an implied admission that

the party seeking the injunction was entitled to damage, here that question is open and can only be determined upon a final hearing of the cause.

We are of the opinion, therefore, that the court was not warranted in requiring the execution of a bond as a condition to the dissolution of the temporary injunction in this cause. For this reason, we will remand the cause to the Circuit Court of Preston County, with directions to eliminate from its order of September 27, 1947 the requirement of the bond contained therein.

The court below took pains to state that its decree was not based upon the merits of the cause at the time it entered the order or decree, dissolving the injunction and requiring the bond, aforesaid. This appeal, as stated above, goes only to the question of whether the requirement of the bond was proper. Our decision is not intended to reflect any opinion on the merits of the cause, particularly whether the allegations of the bill respecting irreparable injury are sufficiently definite and complete on which an injunction against the future operation of the mine could be based; whether the solvency or insolvency of the lessee, and its ability to meet any reasonable award of damage arising from any violation of its lease should be considered. These and the many other questions which may arise in the development of the cause on its merits, are expressly reserved for future action, by the trial court, or by this Court should the cause be again presented to us after a final decree in the court below.

The decree of the Circuit Court of Preston County, entered on the 27th day of September, 1947, insofar as it requires as a condition to the dissolution of the temporary injunction heretofore awarded, the execution by the lessee of a bond of $25,000.00, on the conditions as therein stated, is reversed; but the decree dissolving the injunction is affirmed. The cause is remanded to said Circuit Court for the entry of a proper order making effective our ruling.

*Modified and affirmed.*