DELORES E. WILLIAMS, ALSO KNOWN AS DELORES E. GROWCOCK, APPELLANT, v. PAUL F. WILLIAMS, APPELLEE.

294 N. W. 2d 357

Filed July 8, 1980. No. 42778.

Richard L. Kuhlman, for appellant.

Ray C. Simmons, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

KRIVOSHA, C.J.
The appellant, Delores Growcock, formerly Delores

Williams, appeals from a judgment of the District Court for Dodge County, Nebraska, sustaining a motion for summary judgment filed by Delores' former husband, Paul Williams. The effect of the judgment was to relieve Mr. Williams of any obligation to pay child support for the parties' minor child, Stacy Ann Williams, from and after October 20, 1967. We find that the judgment of the trial court must be reversed and remanded for further proceedings in accordance with this opinion.

All of the evidence presented initially to the trial court, and to this court on appeal, was by way of documents, including interrogatories, requests for admissions, affidavits, and stipulations. From those documents, it is established that the parties were married on September 24, 1962. The parties' only child, Stacy, was born early in 1963. On July 24, 1963, the marriage of the parties was dissolved by the District Court for Dodge County, Nebraska, and the custody of Stacy was awarded to her mother. Mr. Williams was ordered to pay as child support for Stacy $12.50 per week until certain other expenses of the parties had been paid by him, at which time he was then to pay $15 per week as child support.

In May of 1964, the appellant was remarried in Omaha, Nebraska, to one Harlan E. Growcock and they moved to Milwaukee, Wisconsin, where, in June of 1967, they initiated proceedings for the adoption of Stacy by Mr. Growcock. Mr. Williams apparently had, in the meantime, moved to Portland, Oregon, where he continued to reside. Shortly after June 13, 1967, Mr. Williams received a letter in Portland, Oregon, from Lawrence G. Wickert, an attorney in Milwaukee, Wisconsin, representing the Growcocks. The letter advised Mr. Williams that Mr. Growcock desired to adopt Stacy and requested Mr. Williams to sign the necessary consent forms included in the letter. Specifically, the letter from Mr. Wickert said, in part:

> We wish to point out that under the judgment of divorce dated July 24, 1963, . . . you were required to pay support money. We have been informed that a considerable arrearage has occurred in relationship to these payments. *If* the adoption is consummated, your obligation to support the child would terminate.
>
> . . . .
>
> We shall also notify you when the adoption is complete.
>
> If you have any questions in this matter, feel free to contact me.

(Emphasis supplied.)

The record indicates that the suggestion by Mrs. Growcock's attorney that Mr. Williams was substantially in arrears in his child support payment was correct. Mr. Williams had not made any child support payments since December of 1964, except for one payment in 1965. He resumed making child support payments in December 1976.

Harlan and Delores Growcock separated late in June of 1967 and Mrs. Growcock returned to Fremont, Nebraska, in July. The Growcocks' marriage was dissolved on July 9, 1971, by decree of the District Court for Dodge County, Nebraska. The record does not establish whether the anticipated adoption was ever completed in Milwaukee. There are several letters which were offered in evidence which would indicate that the adoption was not, in fact, completed, even though Mr. Williams had signed all the documents which were requested of him.

The record further reflects that, in September of 1967, a letter was sent by Mr. Wickert, the Milwaukee counsel who had obtained the consent from Mr. Williams, addressed to Guaranty Escrows of Portland, Oregon. Apparently, Guaranty Escrows had sought information about the proposed adoption of Stacy. The letter read, in part, as follows:

> We regret that we are unable to contact either Mr. or Mrs. Growcock in connection with the adoption of Stacy Ann Williams. We have proceeded to file the petition for adoption and the Adoption Division in Milwaukee County was eager to make its investigation so as to consummate the adoption, however, they also have been unable to contact either Mr. or Mrs. Growcock. *Under the circumstances, the adoption remains at a standstill and if the Adoption Division is unable to locate them, they may in all likelihood dismiss the adoption proceedings.*

(Emphasis supplied.) While the evidence does not make it clear whether Mr. Williams ever received a copy of the letter addressed to Guaranty Escrows, it does seem, from the record, that he may have been made aware of the fact that the adoption had not been completed by reason of that letter. What is clear from the record is that Mr. Williams never received any official indication that the adoption *had* been completed, nor was he ever made aware that the situation had changed from that reflected in Mr. Wickert's letter to Guaranty Escrow.

On June 1, 1978, soon after our decision in the case of *Smith v. Smith*, 201 Neb. 21, 265 N.W.2d 855 (1978), Mr. Williams filed a petition in the District Court for Dodge County, Nebraska, to terminate his child support payment obligations as of June 27, 1967. In response to that petition, Mrs. Growcock cross-applied for a modification of the divorce decree to increase the amount of child support. Both parties moved for summary judgment and the court, on April 6, 1979, after hearing, entered an order granting Mr. Williams' motion for summary judgment and overruling that of Mrs. Growcock. In his motion for summary judgment, Mr. Williams relied upon our holding in the *Smith* case. It is from the order granting that motion which Mrs. Growcock now appeals.

In reviewing this matter, we must keep in mind that the District Court's determination was made upon the parties' respective motions for summary judgment. Under Neb. Rev. Stat. §§ 25-1330 to 1336 (Reissue 1979), the granting of a summary judgment is authorized only where the moving party is entitled to judgment as a matter of law and no genuine issues of fact exist. *Hall v. Hadley*, 173 Neb. 675, 114 N.W.2d 590 (1962). The question presented on a motion for summary judgment is not whether the evidence is sufficient to support a finding by a fact finder in favor of the moving party, but rather whether there exists no genuine issue as to any material fact so that, under those facts, the moving party is entitled to a judgment as a matter of law. "Where reasonable minds may differ as to whether an inference supporting the ultimate conclusion can be drawn, summary judgment should not be granted." *Blue v. Champion International Corp.*, 204 Neb. 781, 785, 285 N.W.2d 511, 513 (1979). Therefore, in order to affirm the action of the trial court sustaining Mr. Williams' motion for summary judgment, we must find that there is no genuine issue as to any material fact and that Mr. Williams is entitled to judgment as a matter of law.

Mr. Williams bases his claim upon our holding in *Smith v. Smith, supra,* and argues that, in *Smith*, we found that the securing of the consent of the father to an adoption by another of his child is such action which, by its nature, should terminate further liability for child support under the doctrine of equitable estoppel.

It is true that a quick reading of *Smith* could lead one to the conclusion that we have declared that, if a father executes a consent to the adoption of his child, he is thereafter relieved of any further obligation to pay child support. We believe, however, that such a conclusion ignores both the legal basis for our decision in *Smith* and the specific facts of that case.

To begin with, we based our decision in *Smith* not on the fact that the signing of the consent by the father relieved him of any further liability for child support, but rather, that the signing of the consent under the circumstances in *Smith* precluded the mother from collecting the child support because of the doctrine of equitable estoppel. We specifically pointed out in *Smith* that courts are without authority to forgive accrued child support and that such payments continue to accrue in accordance with the court's previous order until paid in full or otherwise modified by the court. See *Ruehle v. Ruehle*, 169 Neb. 23, 97 N.W.2d 868 (1959).

In *Smith*, however, unlike the instant case, the trial court that had granted the divorce approved the proposed adoption and the former wife and her new husband actually took the child into their home, supported her, cared for her, raised her, and treated her just as if the adoption had been completed. Under such facts, we found it would be inequitable to permit the mother to subsequently seek to enforce the payment of the accrued, but unpaid, child support and, therefore, applied the doctrine of equitable estoppel.

We continue to believe that the doctrine of equitable estoppel may apply in such cases if the facts support it. The question here, however, is whether there is a genuine issue of any material fact necessary to establish Mr. Williams' right to invoke that doctrine. There is more required to invoke the doctrine of equitable estoppel than just the father's signing of a consent to adoption form.

The authorities who have attempted to explain the doctrine of equitable estoppel have pointed out that it is a doctrine based upon the principle that one who has previously taken a position with reference to a transaction and thereby obtained a benefit from the other party cannot thereafter take an inconsistent position which would result in prejudice to the party

who relied on the original position. See *Smith v. Smith, supra*. The gist of equitable estoppel is that a party who has, by his statements or conduct, asserted a claim based on the assumption of the truth of certain facts whereby he has obtained a benefit from another party, cannot later assert that those facts are not true if, by reason of that assertion, the other party will be prejudiced. Equitable estoppel is, to that extent, like fraud and cannot be confined within any strict definition. See H. McClintock, Equity, § 31 (2d ed. 1948).

In *Chappelear v. Grange & Farmers Ins. Co.*, 190 Neb. 589, 592, 210 N.W.2d 921, 924 (1973), we set out the necessary elements of equitable estoppel:

As to party estopped, (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts; as to the other party, (4) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

See, also, *County of Scotts Bluff v. Hughes*, 202 Neb. 551, 276 N.W.2d 206 (1979); 28 Am. Jur. 2d *Estoppel and Waiver* § 35 (1966).

Further in *Chappelear v. Grange & Farmers Ins. Co., supra* at 592, 210 N.W.2d at 924, we said: "The

essential element of estoppel is a representation relied upon by the party claiming the benefit of the estoppel, which induced him to act, or refrain from acting to his prejudice." In *Scottsbluff Nat. Bank v. Blue J Feeds, Inc.*, 156 Neb. 65, 80, 54 N.W.2d 392, 401 (1952), we quoted from the case of *W. E. Richmond & Co. v. Security Nat. Bank*, 16 Tenn. App. 414, 64 S.W.2d 863 (1933), wherein it was said:

> An essential element is the entire good faith and innocence of the party imposed on. An estoppel by representation cannot be claimed by one acting thereon, if he knows of, or has been put upon inquiry as to its falsity; and where one with a convenient opportunity to ascertain the real facts by the exercise of reasonable diligence neglects to do so after having been put upon inquiry, he will not be permitted to defeat another's just rights by urging an equitable estoppel based on his having acted to his disadvantage in relying upon that other's innocently mistaken representation regarding those facts, where such representation was not made for the purpose of inducing him so to act.

We believe that there is a genuine issue of fact with regard to whether the requisite elements necessary to invoke the doctrine of equitable estoppel exist in this matter and, in particular, whether Mr. Williams was put on notice that the adoption had not been completed and that he remained liable for child support. On the basis of the record before us, reasonable minds could differ as to the conclusions to be reached on these issues and, therefore, summary judgment should not have been granted.

While we believe, as we have already indicated, that equitable estoppel may be applicable in child support cases, we do not believe that the mere execution of a document consenting to the adoption of a child, standing alone, is sufficient to justify im-

posing the doctrine of equitable estoppel and denying to a parent with custody of a child the benefits of a previously entered order of a court. To the extent that our holding in *Smith v. Smith, supra,* is to the contrary, it is modified. For that reason we believe that the matter must be remanded to the District Court for further proceedings consistent with this opinion. At that time, the parties may introduce evidence in order to permit the trial court to determine whether Mrs. Growcock should be equitably estopped from collecting the delinquent child support which the court had ordered, or whether, under the circumstances, Mr. Williams should be required to continue paying child support for Stacy at this time. For that reason, we are compelled to reverse and remand with directions.

REVERSED AND REMANDED WITH DIRECTIONS.