ANNE REDICK, APPELLEE, V. JOHN S. REDICK, APPELLANT.

368 N.W.2d 463

Filed May 31, 1985.   No. 84-030.

Albert L. Feldman of Harris, Feldman, Stumpf & Pavel, for appellant.

Roger R. Holthaus, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Respondent appeals from a district court order denying him equitable relief in estopping his former wife, Anne Redick, from collecting previously ordered child support. We affirm the decision of the district court.

The petitioner-appellee, Anne Redick, married the respondent-appellant, John S. Redick, in December of 1971. Anne Redick at the time of the marriage had custody of four children from her previous marriage to William C. Piper. John Redick adopted the four children in October of 1972. The petition to adopt was based on abandonment by the natural father, William C. Piper. After 10 years of marriage Anne Redick filed for divorce from John. A decree of dissolution was entered on September 30, 1981. She was granted custody of the couple's four minor children, and John Redick was ordered to pay a total of $320 per month child support.

Anne Redick reestablished a relationship with her former husband, the children's biological father, William C. Piper, and remarried Piper on June 18, 1982. On May 19, 1982, prior to that remarriage, John Redick signed a "Voluntary Appearance, Waiver of Notice, and Consent" whereby he waived notice of hearing on any petition for adoption of his minor children and consented "that said minor children may be adopted by their natural father William C. Piper." Six days later, on May 25, 1982, Anne and John Redick filed a "Joint Application and Order" seeking to extinguish all John Redick's parental rights and terminate his obligation to pay child support after December 31, 1982. Attached to the application was a letter signed by Piper offering to renew his support and responsibilities for the children beginning January 1, 1983. In the application Anne Redick stated that it was in the best interests of the children to allow respondent to relinquish his rights and to allow Piper to "re-establish" himself as the "de jure father" of the children. A district judge refused to sign the order prospectively terminating John Redick's child support obligations and parental rights. That same day, Anne and John Redick filed a "Stipulation and Order." This May 25, 1982, order was signed by a district judge and granted Anne's motion to amend the 1981 divorce decree to allow her to move the

children to California.

After Anne's remarriage to her first husband, Piper, in June of 1982, Anne and the four children moved to California with Piper to live as a family. John Redick and Anne testified that, pursuant to an agreement between them, John signed the documents relinquishing his parental rights and allowing Anne to move the children. Anne instituted adoption proceedings in California. Both parties also testified that, in contemplation of the adoption, they agreed that John Redick's support obligation was to end December 31, 1982.

Beginning in July of 1982, Anne Redick had difficulty collecting child support from John Redick. John testified he quit paying child support when he learned Anne had remarried because he "felt rather foolish sending money to somebody else's family." Anne garnisheed John Redick's wages. On July 12, 1982, Anne's California attorney wrote a letter to John Redick's attorney informing him that an adoption petition would be filed and confirming a phone conversation in which John Redick had apparently agreed not to file a motion to set aside the order permitting the removal of the children to California while the adoption was pending. On July 29, 1982, Anne Redick's Omaha attorney wrote a letter to John Redick's attorney, which said in part:

> As we discussed, the adoption by Mr. Piper is proceeding without incident, and it is my client's intent to follow through with the termination of Mr. Redick's parental rights as soon as the children are adopted by Mr. Piper. . . . In the meantime, please remind your client that he has an obligation to pay child support up until the time the parental rights are terminated.

During all this time, of course, John Redick was and remained the father of the four children in the middle of this marital, musical chairs contest. While the three adults involved treated these four minors as if they were chattels, the children themselves retained their identities and, as the later facts herein show, finally helped put an end to this discord over who was to be their father.

The four children registered in school in California under the name Piper, and the California adoption proceedings

progressed routinely. In October of 1982 Anne Redick's and Piper's remarriage became re-strained, and the children, whose adoption hearing had been set, expressed their refusal to be adopted by Piper. Anne testified that the children were required to consent to their California adoption, since they were over 14 years of age, and it was clear they would not so consent. Where the California law is not pled nor proved, it is presumed to be the same as the law of this jurisdiction. *Cockle v. Cockle*, 215 Neb. 329, 339 N.W.2d 63 (1983). We presume that the consent necessary to an adoption in California is the equivalent of Neb. Rev. Stat. § 43-104 (Reissue 1984). The Redick children, therefore, all being over 14 years old, would need to consent to the adoption by Piper before it could be ordered by the California court. Apparently, none of the three adults had determined if the children desired that John's parental rights be terminated so they could be adopted by William Piper. Because of the children's refusal before the final hearing, and because of her marital difficulties with Piper, Anne was required to ask her California attorney to put the adoption proceedings on the "back burner." The adoption was not completed.

In February of 1983 Anne Redick, realizing the adoption would not be completed because of her strained situation with Piper, wrote a letter to John Redick informing him of the situation. Anne filed in California for dissolution of her marriage on April 9, 1983, and moved back to Omaha with the children in August of 1983. The divorce decree dissolving the Piper marriage was signed on June 16, 1983, and provided that Piper pay Anne Redick $500 per month alimony but no child support.

On March 22, 1983, Anne Redick filed an application requesting an order from the Douglas County District Court stating that John Redick's obligation to pay child support under the September 1981 decree was valid and continuing. Although Anne Redick's petition did not state a claim for relief, John Redick filed a response to Anne Redick's application, alleging that Anne was estopped from collecting the child support ordered under the Redick divorce decree, thus placing the issue before the court. In the alternative John Redick asked for a modification of the divorce decree because a substantial change

of circumstances required the reduction of the child support payments.

The district court, on December 13, 1983, issued its order estopping Anne from collecting the January and February 1983 child support payments but requiring John to pay child support accumulating after February 28, 1983, and owing before January 1, 1983. John Redick's motion for new trial was overruled on January 6, 1984, and he timely appealed. John Redick asserts the trial court erred in not finding Anne was estopped from collecting all child support payments. Anne Redick filed no cross-appeal from the December 13, 1983, order estopping her from collecting the accrued January and February 1983 child support.

Appellant relies on *Smith v. Smith*, 201 Neb. 21, 265 N.W.2d 855 (1978). In that case the parties were divorced, custody of the couple's minor child was awarded to Barbara Smith, and Delbert Smith was ordered to pay child support. Subsequently, Barbara Smith remarried and asked Delbert Smith to sign a consent to adoption by William Harrison, Barbara's new husband. Delbert Smith did so. The district court also consented to the adoption. The adoption process went smoothly, but before it was completed Barbara's second husband, who was in the service, was transferred to another state and the adoption proceedings were never completed. Later, Harrison died, and Barbara attempted to collect the child support from Delbert. Barbara had refrained from collecting child support after Delbert consented to the proposed adoption, up until the time of Harrison's death. We held that "[t]he securing of the consent of the father to an adoption by another of his child is such action which by its nature should terminate further liability for child support." *Id*. at 28, 265 N.W.2d at 860.

In *Williams v. Williams*, 206 Neb. 630, 294 N.W.2d 357 (1980), we more fully explained our position in *Smith* and, to the extent *Smith* was inconsistent, modified it. *Williams* sets out the standard to be applied in this case. In *Williams*, Delores Williams, who had custody of her one daughter from a previous marriage, remarried. Delores' attorney sent a letter to Paul Williams, her first husband, asking for his consent to adoption

of their daughter by Delores' second husband. Delores stated that Paul's child support obligation would end if the adoption were completed. Paul executed the necessary consents to the proposed adoption. The court that had handled the Williams divorce did not grant its consent to the adoption. Based on *Smith*, the trial court sustained Paul's motion for summary judgment, and we reversed and remanded for a factual determination of whether equitable estoppel existed. We noted that more than just the father's consent to the adoption was needed to equitably estop his former wife from collecting child support. We stated at 636, 294 N.W.2d at 362:

> In *Smith* . . . the trial court that had granted the divorce approved the proposed adoption and the former wife and her new husband actually took the child into their home, supported her, cared for her, raised her, and treated her just as if the adoption had been completed. Under such facts, we found it would be inequitable to permit the mother to subsequently seek to enforce the payment of the accrued, but unpaid, child support and, therefore, applied the doctrine of equitable estoppel.

John Redick pled a defense of equitable estoppel to Anne Redick's petition of continued child support. This matter is an equity action, and on appeal we review the case de novo without reference to the findings of fact made by the trial court; but where testimony or evidence is in irreconcilable conflict, we will take into consideration that the trial court observed the witnesses. *Barry v. Wittmersehouse*, 212 Neb. 909, 327 N.W.2d 33 (1982). In *Williams v. Williams, supra* at 637, 294 N.W.2d at 362, we reiterated the essential elements of equitable estoppel set out in *Chappelear v. Grange & Farmers Ins. Co.*, 190 Neb. 589, 210 N.W.2d 921 (1973), quoting in part as follows:

> As to party estopped, (1) conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive,

of the real facts; as to the other party, (4) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his injury, detriment, or prejudice.

We find that the district court's decision should be affirmed. John Redick failed to prove at least the first and last of the elements listed above in the *Chappelear* case necessary to establish equitable estoppel. The burden of proof rests on the party who pleads an estoppel to establish the facts upon which the estoppel is based. *Bors v. McGowan*, 159 Neb. 790, 68 N.W.2d 596 (1955).

In this case John did not prove that Anne Redick's conduct amounted to a false representation or concealment of material facts or that it was calculated to convey the impression that the facts were otherwise than, and inconsistent with, those which Anne subsequently attempted to assert. At the time of John Redick's granting his consent to adopt, he knew full well that the court might refuse to terminate his rights and refuse to grant the adoption. He knew that the district court for Douglas County had refused to consent to the adoption and had refused to terminate his child support payment prospectively when he and Anne had earlier applied for termination of his parental rights and his obligation to support the children. There is no indication that consent to adoption alone was a basis for Anne's promise to refrain from collecting child support. Indeed, quite to the contrary, the letters and testimony of both parties indicate the termination of rights and obligations was to occur after the adoption was completed. The agreement was entered into in contemplation of a completed adoption by William C. Piper. John Redick testified at the September 13, 1983, hearing that he relied on and expected the adoption to proceed as intended when he signed the consent to adopt. Paragraph 8 of John Redick's "Response to Application and Notice" states:

Upon learning that said second order for the termination of child support had not been entered, respondent's attorney, after extended correspondence and

conversation with petitioner's attorney, agreed that respondent would not move to set aside the order for removal of the children to California on the condition that a petition for adoption by the natural father would be filed forthwith in the State of California.

The facts of the record indicate that the deal was struck in contemplation of an actual adoption, and it is also clear from the record that the children themselves, whom neither John nor Anne consulted concerning the termination of John's rights, helped put an end to the adoption proceedings.

Further, a party invoking the doctrine of equitable estoppel must have changed his position in reliance on the misrepresentation, to his injury, detriment, or prejudice. In this case John Redick still has all his rights as a father. The fact that he consented to Anne's moving the children and Piper's adopting the children is not controlling, as the children were back in Omaha in less than a year and no adoption took place.

John Redick claims that his relationship with his children was damaged when he signed the consent to adopt and cut off his communication with them. This, he says, was done for their benefit. Both Anne and the children have encouraged contact with their father, John Redick, and he has a right to see them. John Redick had ended communication with the children before he signed his consent to adopt; therefore, his argument that he had irreparably damaged his relationship with his children because of his action done on reliance of the termination of his support obligation is not supported by the record.

John Redick points out that he was but a "walk-on" father for the children and felt that divorcing himself from the children enabled them to rebond with their biological father, William C. Piper. Nebraska law does not recognize a "walk-on" father, and such a classification is not recognized by this court. Neb. Rev. Stat. § 43-110 (Reissue 1984) states:

After a decree of adoption is entered, the usual relation of parent and child and *all the rights, duties and other legal consequences of the natural relation of child and parent shall thereafter exist* between such adopted child and the person or persons adopting such child and his, her or their

kindred.
(Emphasis supplied.)

In the eyes of the law, therefore, as set out in § 43-110, there exists between the adoptive father, John Redick, and the four children he adopted "the usual relation of parent and child and all the rights, duties and other legal consequences of the natural relation of child and parent . . . ." See, also, *In re Estate of Luckey. Bailey v. Luckey*, 206 Neb. 53, 291 N.W.2d 235 (1980). John Redick had been the children's legal father for 9 years at the time of his divorce, and continues to be their father. The oldest child was 7 years old and the youngest was 3 years old when John Redick adopted them. Even the oldest child had a much longer and more stable relationship with John Redick than with William C. Piper. John Redick was the person these children thought of as their father. Their connection with Piper was of short duration.

We agree with the district court, and find from the facts of this case, that John Redick has not sustained the burden of proving that Anne Redick should be equitably estopped from collecting child support.

AFFIRMED.

HASTINGS, J., participating on briefs.